George McRea, Respondent, *v.* The Central National Bank of Troy et al., Appellants.

The criterion of a fixture is the union of these three requisites: First. Actual annexation to the realty or something appurtenant thereto. Second. Application to the use or purpose to which that part of the realty to which it is connected is appropriated. Third. The intention of the party making the annexation to make a permanent accession to the freehold.

The rule prescribed by the Revised Statutes (2 R. S., 83, §§ 6, 8), which, where property is annexed to the freehold, as between the personal representatives and the heirs of a deceased person, makes the mode of annexation the test by which to determine whether it is personal or real property, is not controlling in cases between vendor and vendee.

In such cases the purpose of the annexation and the intent with which it was made are the most important considerations.

If the article is attached for temporary use, with the intention of removing it, a mortgagee cannot interfere with its removal by the mortgagor; but if attached for the permanent improvement of the freehold, he may.

Where the character of property as personalty or realty is not fixed, but depends upon the intention with which it was annexed to the freehold, the conduct of the party by whom it was annexed is proper to be shown and important as throwing light upon the intention.

Plaintiff erected upon his premises a building specially adapted for a twine factory and for the purpose of holding the machinery used in the business of manufacturing twine, which, being very heavy, required extra strength in the building. He placed therein the requisite machinery. Each machine was fastened to the floor by bolts, nails or cleats, and was attached to the gearing. Most of the machines were complete in themselves, could be removed without material injury to them or to the building, and could be used in any other building having strength to support and power to run them, but would be of less value if taken out and sold than if they remained as part of the factory. Plaintiff carried on the business for some years, when he contracted to sell, describing the property in the contract of sale as the real estate situate in J., viz., the twine factory, etc., together with all the machinery, etc., the whole being sold for a gross sum. He executed a conveyance describing the land only, and took back a mortgage with the same description. The lands and buildings, without the machinery, were worth much less than the amount of the mortgage. In an action to restrain judgment creditors from selling the machinery on execution as personal property, these facts appeared, and plaintiff testified that the machines were placed in the building for permanent use. *Held* (Allen, Andrews and Earl, JJ., dissenting), that the evidence was sufficient to justify a finding that the original intent of annexation was to make the

machinery permanently a part of the freehold; that as between the parties the machines were fixtures, and so covered by the mortgage; and that plaintiff was entitled to the relief sought.

Also, *held*, that it was immaterial upon the question of intent that plaintiff, at the request of the grantee, after execution of the deed, executed also a bill of sale of the machinery, tools and fixtures.

*Murdock* v. *Gifford* (18 N. Y., 28); *Hellowell* v. *Eastwood* (6 Exch. [W., H. & G.], 295); *Walker* v. *Sherman* (20 Wend., 636); *Vanderpoel* v. *Van Allen* (10 Barb., 157) distinguished.

(Argued March 31, 1876; decided September 19, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff entered upon a decision of the court at Special Term.

This action was brought by plaintiff as mortgagee, and claiming under a mortgage upon real estate against defendants, who are judgment creditors of the mortgagor, and the sheriff holding executions, issued on their judgments, to restrain them from selling on said executions certain machinery advertised to be sold as personal property, which plaintiff claimed to be part of the realty.

The premises were formerly owned by plaintiff, and he erected thereon a building as a twine factory, specially adapted for the machinery used in the business of manufacturing twine, and placed therein the machinery in question, as he testified, " for permanent use." The machinery consisted of the various machines necessary for and adapted to that business. The plaintiff carried on the business of manufacturing twine for several years, using the building and operating the machinery.

On the 14th day of November, 1872, he contracted to sell the premises to one George Catlin for $28,000. The contract described the property as follows :

" All that real estate situated in said Johnsonville : First, the twine factory and flax mill, and blacksmith shop, bounded as follows :    *    *    *    together with all the machinery, tools and fixtures belonging to the party of the first part, and all water privileges deeded to him on his purchase of said real estate."

On the 1st day of January, 1873, the premises were con-

veyed by McRea to Catlin by two deeds, and a mortgage executed and delivered back by Catlin to McRea for $21,100, the balance of the purchase-money.

The deeds and mortgages were drawn by a Mr. Merrill. After they were finished Mr. Catlin read over the deeds, and saw no mention was made of the machinery, and asked McRea if he did not intend that should pass. To this McRea replied he did. Mr. Merrill then suggested that the "easiest way" or the "best way" to fix it was to make a separate bill of sale, which was done. No separate mortgage of the machinery was taken. Some time after this, in January, 1873, Catlin conveyed one-half of the premises to Christopher A. Banker, and also gave to him a bill of sale for one-half of the machinery. Defendant The Central Bank of Troy recovered judgment against Catlin & Banker, and issued executions to the defendant Quackenbush, as sheriff, who seized upon the property described in the complaint.

The action seeks to restrain that sale.

The court found, in reference to the character of the machinery, as follows:

"That the machinery mentioned and enumerated in the complaint and located in the twine mill, were and are fixtures and part of the freehold conveyed by the plaintiff to George O. Catlin, and is not personal property; and as facts showing that these are fixtures, I further find (*a*) that the building in which the machinery was erected for the purpose of a twine factory, and the manufacturing specially adapted to it and used with it; (*b*) that the original intention of annexation was to make this machinery permanently a part of the building and this freehold; (*c*) that the mortgage under which the plaintiff claims title, was to secure to him the payment of the purchase-money of the premises described therein, and was taken by him and given to him with the intention of holding the machinery in question as part of the realty and not as personal property."

And as conclusion of law, that plaintiff was entitled to the relief sought.

Upon a settlement of the case the following additional find-ings were made:

" That a small part of the machinery, mentioned in the com-plaint, was, before the present twine mill was built, used by the plaintiff in an old wooden mill for the purpose of manu-facturing twine, and that such old wooden mill was, prior to its use as such twine mill, used as a paper mill. That the rest of said machinery was manufactured in Scotland, purchased there by the plaintiff, imported in sections and put together in said mill."

The court was requested to find: " That each of the machines mentioned in the complaint, with the exception of the two 'iron softeners,' was a machine complete in itself, which received no support from the walls, ceiling or roof of the building, and would operate with the proper power applied to it wherever it was placed."

The court so found, with the addition of the words, " but the several machines were attached to the building by nails, bolts and cleats, and the gearing and shafting."

The court found: " That all the machines mentioned in the complaint could be taken apart without injury to themselves or to the building in which they were placed, except such injury as would result from the loosening of the fastenings, and could, without injury, be put together again and operated in any place where there was sufficient room for them to stand, and where the necessary power could be applied. That each of these machines, with the exception of the iron softener above men-tioned, stood upon the floor of the mill, and was not in any manner attached to or supported by the walls or ceiling, and that it was, in each case, operated by a belt actuated by the gearing of the mill and passing over a pulley on the machine, and that it was not connected with the gearing in any other way."

" That none of said machines, with the exception as afore-said of the said two iron softeners, were ever in any manner attached or fastened to the building except as hereinafter stated, to wit: Some of the machines were, before the sale

by plaintiff to Catlin, fastened to the floor at the end where the belt went on, by angle bolts made for the purpose, which held the feet of the machines to the floor. These bolts went down through the floor and were held by nuts screwed on below the floor. Other machines were held by nails of a similar construction — that is, the upper part bent over the foot of the machine, while the lower part was driven into the floor. Others were held by common nails, and one or two by cleats of wood nailed down on each side of the machine; they were also attached to the gearing."

The court was requested to find: "That whenever these bolts, nails or cleats were used they were placed only at the end of the machine where the pulley was located, and they were placed there for the purpose of steadying the machine, and preventing it from being moved or lifted by the action of the belt." The court so found — but added thereto the words, "but I do not find that that was the only purpose."

The court also found, that there were tools and machinery in the mill or factory, other than those enumerated in the complaint. Further facts appear in the opinion.

*Esek Cowen* for the appellants. The court erred in receiving the testimony of Richmond, who drew the agreement between plaintiff and Catlin, as to what they stated in reference to the kind of security McRea should have. (*Blossom* v. *Griffin*, 13 N. Y., 573; *Pollen* v. *Leroy*, 30 id., 549; *Hale* v. *Omaha Bk.*, 49 id., 626.) The machinery was not a part of the real estate as between the mortgagor and mortgagee. (*Potter* v. *Cromwell*, 40 N. Y., 287; *Vanderpoel* v. *Van Allen*, 10 Barb., 157; *Murdock* v. *Gifford*, 18 N. Y., 28; *Voorhees* v. *McGinnis*, 48 id., 278.)

*R. A. Parmenter* for the respondent. The machinery was real estate. (*Haskin* v. *Woodward*, 45 Penn., 42; 2 W. & S., 116, 390; *Walker* v. *Sherman*, 20 Wend., 636; *House* v. *House*, 10 Paige, 158; *Hovey* v. *Smith*, 1 Barb., 372; *Laflin* v. *Griffiths*, 35 id., 58; *Bishop* v. *Bishop*, 1 Kern., 123, 127;

*Goodrich* v. *Jones*, 2 Hill, 142; *Tabor* v. *Robinson*, 36 Barb., 483; *Snedeker* v. *Warring*, 2 Kern., 170; 24 N. J. Eq., 260; 10 Kan., 314; 4 Daly, 359; 18 N. Y., 28; 40 id., 287.)

Rapallo, J. The court found as facts that the articles of machinery described in the complaint were fixtures and part of the freehold, and as facts showing that they were fixtures: First, that the building in which the machinery was, was erected for the purpose of a twine factory, and the machinery specially adapted to it and used with it; second, that the original intention of this annexation was to make this machinery permanently a part of the building and the freehold; and, third, that the mortgage under which the plaintiff claims title was to secure to him the payment of the purchase-money of the premises described therein, and was taken by him and given to him with the intention of holding the machinery in question as part of the realty, and not as personal property.

In supplemental findings made at the request of the defendants and inserted in the case on settlement, the court found as further facts, that each of the machines, except two, was a machine complete in itself, which received no support from the walls, ceilings or roof of the building, and would operate, with the proper power applied to it, wherever it was placed, and that all the machines could be taken apart without injury to themselves or to the building in which they were placed, except such injury as would result from the loosening of the fastenings, and could, without injury, be put together again and operated in any place where there was sufficient room for them to stand and where the necessary power could be applied. That none of the machines, except the two iron softeners, were attached to the building except as follows: Some of them were fastened to the floor at the end where the belt went on, by angle bolts made for the purpose, which held the feet of the machines to the floor; these bolts went down through the floor, and were held by nuts screwed on below the floor. Others were held by nails of similar construction; others by common nails, and one or two by cleats of wood;

nailed down on each side of the machine; they were also attached to the gearing. That the bolts, nails and cleats were so placed for the purpose of steadying the machines and preventing them from being moved or lifted up by the action of the belt. But to this finding the court added that that was not the only purpose.

On these findings, assuming them to be sustained by evidence, I think it clear on all the authorities cited, that the conclusion that, as between the present parties, the machines were fixtures and part of the freehold was correct. The rule declared by statute (2 R. S., 83, §§ 6 and 7), as between the personal representatives and the heirs of a deceased party, is not controlling in cases between vendor and vendee. (*Potter* v. *Cromwell*, 40 N. Y., 287; *Voorhees* v. *McGinnis*, 48 id., 278; *House* v. *House*, 10 Paige, 158.) That enactment makes the mode of annexation the test whether the property retains its character of personalty, and gives to the executor or administrator things annexed to the freehold, or to any building, for the purpose of trade or manufacture, and not fixed into the wall of a house, so as to be essential to its support. But, as between vendor and vendee, the mode of annexation is not the controlling test. The purpose of the annexation, and the intent with which it was made, is in such cases the most important consideration. The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached as upon the motive and intention of the party in attaching it. If the article is attached for temporary use with the intention of removing it, a mortgagee cannot interfere with its removal by the mortgagor. If it is placed there for the permanent improvement of the freehold he may. (*Crane* v. *Bingham*, 3 Stockton, N. J., 29; *Potter* v. *Cromwell*, 40 N. Y., 296, 297.) The mode of annexation may, it is true, in the absence of other proof of intent, be controlling. It may be in itself so inseparable and permanent as to render the article necessarily a part of the realty, and in case of less thorough annexation the mode of attachment may afford convincing evidence that the intention was

that the attachment should be permanent; as, for instance, where the building is constructed expressly to receive the machine or other articles, and it could not be removed without material injury to the building, or where the article would be of no value except for use in that particular building, or could not be removed therefrom without being destroyed or greatly damaged.   These are tests which have been frequently applied in determining whether the annexation was intended to be temporary or permanent, but they are not the only ones, nor is it indispensable that any of these conditions should exist.   In the case of *Potter* v. *Cromwell* (40 N. Y., 287), before referred to, this court, after a full examination of the numerous authorities, gave its approval to the criterion of a fixture as stated in *Teaff* v. *Hewitt* (1 McCook, 511), viz.: The union of three requisites   First. Actual annexation to the realty or something appurtenant thereto.   Second. Application to the use or purpose to which this part of the realty with which it is connected is appropriated.   Third. The intention of the party making the annexation to make a permanent accession to the freehold.   By the application of that criterion this court, with only one dissenting voice, decided that a portable grist-mill for grinding flour, placed in a building which had been used as a tannery, and was provided with steam power previously placed in the building to grind bark for the tannery, became part of the freehold, as between a judgment creditor and a purchaser of the realty.   It was found by the referee that the grist-mill was placed there by the owner of the realty for the purpose of being used as a permanent structure for a custom grist-mill for the neighborhood, and on that ground it was held by this court to have become part of the realty, notwithstanding the fact that it was not attached to the walls of the building, but annexed, as in the present case, only to the floor.   It had been built elsewhere, and was constructed in such a manner as to be readily taken apart without injury to itself or to the building, and moved from place to place. There was a very slight difference in the mode of annexation from that in the present case, to wit: That to support the

floor, upright posts were placed under it resting on the cellar floor, while in the present case the building was constructed expressly for the purpose of receiving machinery of the description which was placed there, and of sufficient strength to render additional support unnecessary, although, in the present case, some of the machines weighed three or four times as much as the portable grist-mill. The case of *Murdock* v. *Gifford* (18 N. Y., 28), which · is mainly relied upon by the appellant here, was distinguished by showing that, in that case, not only was there an entire absence of any finding that the looms were placed in the building and attached thereto for the purpose of becoming a permanent part of it, but that that fact was expressly negatived by the finding that the attachment was for the sole purpose of keeping them steady in their places — a fact which the court, in the present case, although requested expressly, refused to find. Numerous other cases are referred to, where, notwithstanding similar attachments, the property was held to be personalty; but it appears that in all these cases the object of the attachment excluded the intention of rendering them permanent fixtures. The object, and not the method of the attachment, appears to be considered the controlling feature. "The principles applicable as between vendor and purchaser must vary with the varying circumstances of each case. The question of intention enters into and makes an element of each case. The circumstances are to be taken into account to show whether the erections were made for the permanent improvement of the freehold or for the temporary purposes of trade." (*Farrar* v. *Chauffetete*, 5 Denio, 527.) These principles are recognized in the case of *Voorhees* v. *McGinnis* (48 N. Y., 278). The annexation in that case, it is true, was of a much more complete character than in the present case, or in that of *Potter* v. *Cromwell* (40 N. Y., 287), but the intention of the parties in making the annexation is recognized as one of the tests, and it is conceded that the circumstance that the machinery may or may not be removed without injury to the building or to itself is not now deemed

to be controlling, and Washburn on Real Property (vol. 1, p. 8) is cited, in which the author says: "It may be stated that whether a thing which may be a fixture becomes a part of the realty by annexing it depends, as a general proposition, upon the intention with which it was done."

That the machinery in question was adapted to the use for which the building was constructed is conceded, and, without further pursuing the authorities, I will briefly refer to those cited in the opinion of my learned brother, Allen, J., in support of the proposition that these were not fixtures. *Hellawell* v. *Eastwood* (6 Exch. [W., H. & G.], 295) was a case between landlord and tenant. The alleged fixtures, presumably, were put in by the tenant, as they were distrained for rent. The object and purpose of the annexation was stated by the court not to have been to improve the inheritance, but merely to render the machines steadier and more capable of use as chattels.

*Walker* v. *Sherman* (20 Wend., 636) was partition, and although the machines in dispute had been for many years in the building, the difficulty was that they were not affixed or fastened to the building in any manner, and the commissioners treated them as personalty; but other machinery in the same factory, which was fastened to the building, was treated as realty. (See pp. 637, 638.) This case holds, in respect to machinery, that the two characteristics of adaptation to the enjoyment of the realty and annexation to it must concur; but that where the former characteristic is present, the slightest fastening will be sufficient to constitute annexation. (See pp. 651, 653, 655.) It is enough that it is permanently or habitually attached. In *Vanderpoel* v. *Van Allen* (10 Barb., 157) the machines merely stood upon the floor, without being attached in any way, except by the belts which were used for motion and not for fastening, except as to some of the pieces, in respect to which cleats were used to make them stand level, and there was no evidence of any intention to make them part of the freehold, but all the facts tended to the contrary. *Murdock* v. *Gifford* (18 N. Y., 28) has already been referred

to, and only establishes that the mode of attachment shown in that case was not of itself sufficient to make the machines fixtures, where the purpose of the attachment was solely for the more convenient use of them as chattels, and in the absence of any intention that it should be permanent.

The finding of the court that, in the present case, the original intention of the annexation was to make the machinery permanently a part of the building is not, I think, unsupported by evidence. The building was proved to have been erected especially for the purpose of a twine factory, and with reference to holding this description of machinery. The machines were of great weight, many of them weighing from one to four tons. They were all permanently fastened to the floor of the building, and it is conceded that they were adapted to the purposes for which the building was erected. The plaintiff testified that they were placed there for permanent use. The fair interpretation of this evidence is, that they were placed there for permanent use in that building; they constituted part of the twine factory, and about two-fifths in value of the entire establishment; and it appeared in evidence that although they were capable of removal they would be of less value if taken out and sold than if they remained where they were, as part of the factory. From this evidence the court was, I think, justified in finding that they were intended as a permanent part of the structure, quite as much so as the portable grist-mill in the case of *Potter* v. *Cromwell* (40 N. Y., 287). The dealings between the plaintiff and his vendee, also, showed that they were regarded as fixtures which passed with the land; and although, if the property had in its own nature a determinate legal character, either as realty or personalty, the manner in which the parties treated it would not change that character; yet when, as in this case, the character of the property is not so fixed, but depends upon the intention with which it was annexed, the conduct of the party who annexed it has an important bearing, as throwing light upon that intention. He evidently understood that it was part of the realty, which he could not have done if he had

placed it on the premises for temporary use merely, and with the intention that it should remain personalty. When contracting for the sale of the property, he described it as the real estate situate in Johnsonville, viz., the twine factory and flax mill, etc., etc., with the machinery, etc., and sold the whole for a gross sum of $28,000. By this contract he includes the machinery under the general head of real estate, and in fulfillment of that contract he tendered a conveyance describing the land only, and took back a mortgage for $21,000 of the purchase-money, describing the land only, although the land and buildings, without the machinery, were worth a much less sum than the amount of the mortgage. The fact that at the request of the purchaser he afterwards executed a supplementary bill of sale is not of much significance. It is found by the court that there were some tools and machinery which were loose and are not claimed in the action. The bill of sale also includes fixtures, which necessarily passed with the deed. It was not a necessary instrument, as whatever was personalty would have passed by delivery; but it was probably given because it conformed to the intention of the plaintiff and was a simple confirmation of what he believed he had already done, and was requested by the purchaser or his adviser.

After it has been so repeatedly declared by the courts that the character of articles of the description now in controversy attached to a building, whether they are to be regarded as realty or personalty, is to be determined by the intent of the party attaching them, it would be peculiarly unjust to depart from that doctrine in a case like the present, where the owner of the land and buildings, who himself made the annexation, and necessarily knows the intent with which it was made, afterwards sells the whole establishment and takes for the purchase-money a mortgage manifestly intended to cover all the property sold, but which would be a totally inadequate security if the property which he had annexed were not treated as a part of the realty. There can be no equity in such a case in favor of a mere judgment creditor of the vendee, as against the mortgagee.

On the whole case I think the findings of fact are sustained by evidence, and that the decision of the court below should be affirmed, with costs.

Folger, J. I think that, either from the evidence or the findings, the grantor and mortgagee placed the machinery in the building for a permanent purpose and for the better enjoyment of his estate (*Walmsley* v. *Milne*, 7 C. B. [N. S.], *115); that there did concur actual annexation of the machinery; applicability to the use to which that part of the real estate was appropriated, with which it was connected; and an intention of making the annexation so as to make a permanent accession to the freehold. (*Hoyle* v. *P. and M. Railroad*, 54 N. Y., 314, 324.)

I therefore concur in the opinion of Rapallo, J.

Allen, J. (dissenting). The question presented by this appeal is, whether the plaintiff, as mortgagee of real property, or the defendants, as execution creditors of the mortgagor, has the better legal right to hold the machinery mentioned in the pleadings as security for their respective debts. The property in controversy is in its nature personal, subject to a levy and sale upon execution, and would not ordinarily pass under a conveyance or mortgage of realty. It can only be classed with, and treated as, a part of the realty upon which it may be or in connection with which it is used by annexation thereto, either actual or constructive. It belongs to that class of property which, under some circumstances, may be annexed to real property and become what is known in the law as a fixture, so as to pass under a conveyance of the lands and as part of them, in conformity with the maxim, " *Quicquid plantatur solo, solo cedit.*" Whether a chattel has, by annexation, become a part of the realty depends upon circumstances, and very much upon the intent of the party by whom the annexation has been made, as such intent can be gathered from what is said and done at the time — the character of the chattel and the purposes for and the manner in

which the annexation is made. If the chattel is not a necessary accessory to the building, and is placed in position merely for the purpose of using it for manufacturing or trading purposes, and not with a view to the permanent benefit of the realty, it will not, ordinarily, become a part of the realty. Where the object of affixing the chattel to the freehold is for its more convenient use as a chattel, as shown by its nature' and the use to which it is put, it will retain the character which it had before it was annexed. The law of fixtures has been the subject of much discussion in the courts and by elementary writers, and any attempt to reconcile the views of judges or commentators, or to deduçe from them any fixed or certain standard or rule by which to determine whether, in any given case, a chattel has lost its character as such and become a part of the freehold, would be vain. So a discussion at any length of the general principles of the law of fixtures, or a review of the authorities, would not be profitable, in view of all that has been written upon the subject. We are relieved from the necessity of a consideration of the general rules applicable to this branch of the law by adjudications heretofore made, which have, in this State at least, become a rule of property, and cannot properly be disregarded by us, and which are decisive of the questions involved in this appeal. The chattels and machinery, the subject of the controversy in this action, were not so annexed to the building as to become a part of it, or necessary to its support, but they were susceptible of removal without material injury to themselves or the realty. The only fastenings were such as were required to keep the machinery steady while in operation. The fastenings were only for that purpose, and the only connection with the motive power and other permanent machinery was by bands and straps, by means of which it was operated. It was not a part of, or necessary to, the stationary and permanent machinery. It was not peculiarly fitted for, or adapted to, the building in which it was, but was equally capable of being used in any other building having strength to support it, and motive power for its operation. It was of the same general

character of machinery as was used for the same purpose elsewhere, and its value was not impaired by removal.

The mortgage under which the plaintiff claims, follows the grant by the plaintiff to the mortgagor and is of the realty described by metes and bounds without mention of the machinery. The evidence that the purchase by the mortgagor of the plaintiff was of the lands together with the "machinery, tools and fixtures" belonging to the vendor, for a sum in gross, does not tend to prove that the machinery, any more than the tools, was a part of the realty. On the contrary, the fact that both are mentioned independently and separately is some indication that it was supposed neither would be included in the sale of the lands without express mention. Aside from the evidence admitted under objection, of the purpose and intent of the plaintiff to take security upon the machinery, fixtures and tools, as well as the land, which we think was incompetent, there was no evidence that the plaintiff at the time he put the machinery in the mill had any intent other than to use it for the purposes to which it was adapted so long as it should be convenient or profitable, or that he intended to connect it permanently with the realty with a view to enhance its value. In other words, there was no evidence to justify a finding that the machinery was put in the building except for use as a chattel. If the property in controversy was not described in the mortgage or covered by it as a part of the property mentioned and described therein, the purpose and intent of the mortgagee could not vary the legal effect of that instrument, or make it operative upon property not within its terms. The case is clearly within the principle, and cannot be distinguished from several well considered cases, in which the question has arisen between owners or mortgagees of the freehold and creditors. In *Hellawell* v. *Eastwood* (6 Exch. [W., H. & G.], 294), it was adjudged, that machinery for the purpose of manufacture (i. e., mules used for spinning cotton), fixed by means of screws, some into the wooden floors of a cotton mill and some by being sunk into the stone flooring and secured by

molten lead, were distrainable for rent. Fixtures are not the subjects of a distress for rent. In *Walker* v. *Sherman* (20 Wend., 636), machinery in a woollen factory, consisting of carding machines, picking machines, looms, etc., although used for eleven years or more, and passed from one owner of the factory to another as parts of the factory, were treated as personal property and as not belonging to the realty by commissioners in partition, and their decision and action was affirmed by the Supreme Court upon an elaborate review of all the authorities bearing upon the question. In *Vanderpoel* v. *Van Allen* (10 Barb., 157), the question was between mortgagees of the realty and judgment creditors of the mortgagors who had levied upon the machinery in a cotton factory and other mills, being the premises mortgaged to the plaintiffs. The machinery in controversy there was the same as that in controversy here, and was placed and fastened to the building substantially in the same manner. It was held by Judge Brown, that the property was not a part of the realty or within the denomination of fixtures, and that the judgment creditors were entitled to a decree dissolving the injunction and establishing their right to the property in dispute. *Murdock* v. *Gifford* (18 N. Y., 28), was also a controversy between mortgagees and creditors, involving the same question, and it received the same solution as in *Vanderpoel* v. *Van Allen* (*supra*). Cases have been since decided in this court distinguished by their circumstances from those referred to, and the circumstances which have been deemed sufficient to take them out of the principles adjudged in *Murdock* v. *Gifford*, are pointed out by the judges pronouncing judgment; but in no case that has come under my observation has the authority of the case last mentioned been questioned. Many other cases in this State, in other States and England, coincide with the rule as stated in *Murdock* v. *Gifford*. There is nothing in this case to distinguish it from that and we are not at liberty, by reason of any supposed equities in favor of either party, to unsettle the law so well established in this State by taking distinctions immaterial

and without substance for the purpose of arriving at a different result. These machines were not, as said before, fitted to this building and insusceptible of use elsewhere, neither were they accessories necessary to the enjoyment and use of the building in which they were. The learned judge erred in holding that the several articles were fixtures, and the facts found by him in support of such findings, so far as they were authorized by the evidence, were entirely insufficient to make them a part of the freehold.

The judgment must be reversed and a new trial granted.

For affirmance: Church, Ch. J., Rapallo, Folger and Miller, JJ.; for reversal: Allen, Andrews and Earl, JJ.

Judgment affirmed.