## (March 14, 1967)

■ In the Matter of the CITY OF NEW YORK, Appellant, Relative to Acquiring Title to Real Property Required for Tompkins Square Urban Renewal Project, Within the Area Bounded by East 13th Street and Other Streets, in the Borough of Manhattan. RUTH FASSLER et al., as Trustees under the Will of SAMUEL FASSLER, Deceased, et al., Respondents.

APPEAL from second separate and partial final decree of the Supreme Court at Special Term entered on March 2, 1966 in New York County, insofar as it fixed awards on various damage parcels in a condemnation proceeding.

MEMORANDUM BY THE COURT. The second separate and partial final decree, insofar as it is appealed from, affirmed, with $50 costs and disbursements to each of the claimants-respondents. The record amply supports the findings and conclusions of, and the several awards as fixed by the trial court. Damage Parcel 29 was a gasoline service station, and, by virtue of zoning restrictions

which had the effect of prohibiting additional stations in the area, it was well adapted for its particular use. The annual gallonage of gasoline sold at the station was 344,000 in 1959, 337,000 in 1960, 309,000 in 1961, 289,000 in 1962, 305,000 in 1963 and 315,000 in 1964. Thus, although there was some decline, starting in 1960, in the gallonage put out at the station, it is noted that, beginning with 1963, sales were on the upturn. We know from the trial court's findings that he utilized the capitalization method in reaching a fair and reasonable value for Damage Parcel 29. We know too, from the record as a whole, that he gave due consideration to all relevant factors, including (1) the location of the property including adaptability for its particular use in view of zoning restrictions aforesaid; (2) the rental of $13,500 paid to the owner by Socony Mobil Oil Co. under a lease expiring November 20, 1971, with two renewal options each for a period of five years with a renewal rental of $15,000 for the first option period and $15,500 for the second option period; (3) the rental of $10,800 paid by the subtenant operator to Socony Mobil Oil Co.; and (4) the gallonage sales at the station on the basis of which an operator, in addition to the rental of $10,800, would customarily pay at least one cent a gallon. We know that Special Term arrived at a reasonable net rental income of $10,800 which was capitalized at 8% to reach a fair and reasonable value for the property. The dissent states that the court arrived at a gross reasonable rental value of $13,500. This does not appear. It is true, however, that the record supports a finding that the reasonable gross rental value of the property would be in said amount or slightly in excess thereof. $13,500 was the rent Socony Mobil Oil Co. was to pay until November, 1971 and thereafter, if it exercised its options for renewal, Socony would pay increased rent. It is to be particularly noted that out of this rental, the owner paid the taxes of about $2,700; the taxes were not paid out of the rental paid by the subtenant operator. Yet the dissent would charge this tax expense to the sublease rental of $10,800. In any event, if we add to the sublease rental a reasonable gallonage rental based on the average output at the station, namely, $3,160, we have a gross rental of about $14,000 from which one would properly deduct the taxes and other miscellaneous small expense in arriving at a net rental income. This justifies the finding of a reasonable net rental income in an amount which, when capitalized, would fully support the awards at Special Term. With respect to Damage Parcels 20, 22, 24, 25 and 26, the record also fully supports the findings and conclusions of the trial court. The appellant city challenges a certain portion of the award to claimant, Fassler Iron Works, Inc., for fixtures on the ground that certain of the fixture items were removable and that others were already compensated for in the fee award. The building condemned was used for an iron or steel fabrication works. The fixtures for which an award was made consisted principally of heavy and specially adapted machinery. The trial court found, and we affirm his findings, that "These items are complete operating units made up of several component parts and the elimination of even one component part would destroy the usefulness of the machine. The value of the hoists on severance would be negligible and the cost of dismantling and reassembling the unit is a factor to be considered in the decreased sound value. All these items were affixed to the realty with varying degrees of physical force, with the intention of permanent affixation and were adaptable to the realty involved and were therefore compensable. * * * the claimant has satisfactorily established that it was intended at all times by the owner that the items at issue were to be part of the realty and the property of this claimant, independent of any basic realty value. The record shows that these items were permanently and firmly attached to the realty and were

not personalty to be excluded from the taking ". It was stipulated that the value of the contested items was $47,722; further that, after severance of the same, their value would only be $9,466; and it was conceded by the city that the cost of removal of these items would exceed even the severance value of $9,466. Thus, the trial court stated, that " The city thus does not challenge the claimant's contention that the sound value of the items, if severed, would be nominal or nil and even further lessened by the necessary cost of labor involved in dismantling, removing and reassembling the items." The dissent would allow the award to stand as to certain of the contested items but would set it aside as to others. Apparently, the dissent would consider each item separately and, drawing upon the Justice's own experience in these matters, independent of the record, accept the testimony and evidence presented by the claimant as to some of the items and reject it as to the others. The appeal, however, is to be determined on the record, and we conclude that the findings of the trial court are properly supported. The appellant city also contests that portion of the fixtures award which includes an allowance for wood paneling installed to modernize the offices of the iron works company; also challenged is a small portion of the fixture award for storage decks (so designated in appellant's brief) installed by the company. The evidence was that the claimant iron works company had installed these items, had the right to remove them and expected to get paid for them by anyone taking over the building. The city counsel had contended before the trial court that the paneling should be considered as included with the realty in arriving at a rental value for the realty for the purpose of an appraisal on the capitalization method. On the other hand, claimant's counsel pointed out that the estimates before the court with respect to the reasonable rental value of the property were presented on the basis of comparable floor space only; that they did not take into consideration the rental of offices with comparable paneling. With these contentions before it, the trial court eventually made a separate award for the paneling and also a separate award for the storage decks. Under the circumstances, these were intended to be separate awards and they were not a duplication of the compensation made to the owners in the fee awards. We conclude that the total of the awards with respect to all of the parcels involved on the appeal, including the fixture awards, represents the fair and reasonable value of the realty involved including fixtures.

STEUER, J. (dissenting in part). I agree with the majority in affirming Trial Term's award for Damage Parcels 32 and 56. As to the other parcels, I cannot agree.

*Damage Parcel 29.* The property was a gas station. All parties agree that the proper method of appraisal was by capitalization of income. At the time of taking, July 1, 1964, the property was under lease to Socony Mobil Oil Co. The lease was for 15 years at an annual rental of $13,500, beginning in 1955, with options for renewal for two additional five-year terms. The evidence is undisputed that the tenant found this lease unprofitable and in 1962 subleased the property to an operator for three years at $10,200 for the first year and with successive increases of $300 for each of the succeeding years. In the last year the rent was $10,800.

The court found that the reasonable rental value was $13,500, the expenses $2,700, leaving a net of $10,800 which, capitalized at 8%, is $135,000. Except for the capitalization rate, I can find no justification for the figures adopted.

It is elementary that, in determining value by the capitalization method, the income figure is the reasonable rental value of the property rather than the actual rental, though the latter is very often a potent factor in arriving at the former. Here, the experience of the property shows that, for some years

before the taking, an experienced tenant could not operate the property at the rental stipulated in the lease. Not only does the evidence of the sublease appear but the uncontradicted evidence shows a steady decline in the amount of gasoline sold starting in 1959, and amounting in 1964 to 12%. The real criterion of value would, accordingly, be the sublease. As to the expenses, even the claimant admitted a higher expense figure, namely, $2,969. Taking a rounded figure of $7,900 for the net return and using the same capitalization rate, the result would be $98,750. This, however, would not provide any benefit to the fee owner for the benefit of the lease which he actually had (*Matter of Port of N. Y. Auth.*, 2 N Y 2d 296). The accepted method of calculating this factor is by use of the Inwood Table. For the balance of the lease period this would amount to $15,074, which, added to the capitalized income, would give a rounded value of $114,000.

Claimant's brief does not put any of the above in serious dispute. No real effort is made to sustain Trial Term's findings. Instead, it is argued that the award can be sustained by two adjustments of the figures here employed. The first is by calculating the increment on the basis of the extension options in the lease. This would be proper if there were a reasonable expectation that the options would be exercised. The expectation that a tenant who finds a lease increasingly unprofitable and has sought to cut his losses will renew is not reasonable. The second is adding a gallonage factor. The record shows that gallonage is a sum paid by the gasoline company supplying the station, based on the amount of gasoline sold, and really represents a brokerage or finder's fee to the person who procures the outlet. It may be paid to the operator as a rebate or to the fee owner or an intermediate tenant, as the case may be. It also shows that where the supplying gas company is itself the tenant, no gallonage is paid.

*Damage Parcels 20, 22, 24, 25 and 26.* The property was an iron works. Only fixtures are involved in this appeal. The parties stipulated as to the value of the items in place and after severance. The only issue therefore is whether the items are in fact fixtures to the real estate. Twenty-one sizeable items are involved, and a number of small items, lumped together as miscellaneous. The court was largely influenced in finding all these items to be fixtures by two considerations: first, that the total value of the items in place was $47,722 and, when removed from the building, was $9,350; second, that many of these items were heavy machines resting on or fastened to concrete bases, and removal would involve some damage to the building and possibly to the machine.

Fixtures are properly accretions to the real estate which, in eminent domain, are compensated for apart from the realty itself for convenience in appraisal. This is because left in situ they would not add to the rental value and, in fact, might even detract from it.

The real test of what constitutes a fixture, easy to state but often difficult to apply, is whether the article is installed in or on the premises with the intention that it become a permanent part of the realty (*McRea* v. *Central Nat. Bank of Troy*, 66 N. Y. 489). It should be pointed out, however, that the fact that the article may have been put in the premises with the intent that it stay there indefinitely, with no thought of its being moved, is not the test. A manufacturer equipping a plant generally intends that the machinery which he installs will remain there indefinitely, but that does not make the machinery a fixture. Nor does physical affixation by bolting or the like (*Matter of City of New York* [*Whitlock Ave.*], 278 N. Y. 276). It would, of course, be otherwise if removal could only be effected by removal of a wall or some comparable disturbance of the building. If a building is built

around a machine so that it really is only the housing, as in some power plants, the machine is not a fixture, it is the improvement to the realty itself and, hence, compensable. Also compensable is machinery which operates the building, such as that which provides power for elevators, light, or the like — though such is usually, though not invariably, compensated in the award for the improvement.

Nor is difference between the value of the article installed and its value when removed a determining factor. Many machines, though regular articles of commerce, do not move with frequency in the market, and transactions are limited to those with a specialized interest. Such articles cannot be readily sold except at a substantial sacrifice. Nor can they be moved without considerable expense. These factors may reduce their detached value in the hands of the claimant to practically nothing and, at the same time, they could have considerable value in the hands of a dealer who is equipped to seek out a buyer and is prepared to store the machine until he does.

A careful reading of the record discloses that some of the items found as fixtures can be so described while others, consisting almost wholly of commercial machines used in the claimant's business, cannot. Of the award of $47,722, items totalling $25,627 fall in the latter category, and this amount should be deducted and the award should be reduced to $22,095.

An award was also made for two additional items, of altogether different character. These were installed in the space in the building used as an office and consisted of wood paneling for walls and what is called "decking," being a false ceiling installed to improve the acoustics. Such addenda to the structure do become part of the improvement but their value lies in what they add to the rental value of the premises (see *Matter of City of New York [Maxwell]*, 15 A D 2d 153, 170 *et seq.*). However, the claimant points out that the court did not award any extra value for these features in fixing the value of the building and, consequently, was correct in compensating for them as fixtures. This does not follow. If they did not add to the rental value, they were valueless (*Matter of City of New York [Maxwell]*, *supra*).

The decree should be modified accordingly.

Eager, J. P., Capozzoli, Tilzer and Staley, Jr., JJ., concur in memorandum by the court; Steuer, J., dissents in part in opinion.

Second separate and partial final decree, insofar as it is appealed from, affirmed, with $50 costs and disbursements to each of the claimants-respondents, etc.