[899 NE2d 933, 870 NYS2d 827]

In the Matter of CITY OF NEW YORK, Appellant, Relative to the Melrose Commons Urban Renewal Area, Phase II. KAISER WOODCRAFT CORP., Respondent.

Argued September 3, 2008; decided October 28, 2008

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel,* New York City (*Paul T. Rephen, Rita D. Dumain, Rochelle H. Cohen* and *Fred Kolikoff* of counsel), for appellant. The courts below departed from well-established criteria in awarding claimant compensation for items that were not fixtures. (*Matter of Village of Port Chester,* 42 AD3d 465; *Rose v State of New York,* 24 NY2d 80; *Matter of City of New York,* 278 NY 276; *Matter of City of New York,* 256 NY 236; *City of Buffalo v Michael,* 16 NY2d 88; *Marraro v State of New York,* 12 NY2d 285; *Matter of City of New York,* 10 AD2d 498; *Matter of Certain Prop. on N. Riv. in City of N.Y.,* 118 App Div 865; *United States v Certain Prop. Located in Borough of Manhattan, City, County & State of N.Y.,* 306 F2d 439; *Matter of City of New York [Quick Serv. Laundry],* 48 AD2d 634.)

*Goldstein, Goldstein, Rikon & Gottlieb, P.C.,* New York City (*Michael Rikon* of counsel), for respondent. I. The well-established law of trade fixtures in condemnation proceedings requires compensation for machinery, tools and items used in a business which would lose substantial value upon removal. (*United States v Miller,* 317 US 369; *City of Buffalo v Clement Co.,* 28 NY2d 241; *Rose v State of New York,* 24 NY2d 80; *Marraro v State of New York,* 12 NY2d 285; *Banner Milling Co. v State of New York,* 240 NY 533; *Matter of Board of Water Supply of City of N.Y.,* 277 NY 452; *New York, Ontario & W. Ry. Co. v Livingston,* 238 NY 300; *520 E. 81st St. Assoc. v State of New*

*York,* 99 NY2d 43; *Matter of Village of Port Chester v Sorto,* 14 AD3d 570; *Matter of City of New York [New York Life Ins. Co.],* 21 NY2d 293.) II. New York's eminent domain law inadequately compensates a trade fixture claimant. (*Rose v State of New York,* 24 NY2d 80; *City of Buffalo v Clement Co.,* 28 NY2d 241; *Banner Milling Co. v State of New York,* 240 NY 533; *Interlake Serv. Sta. v State of New York,* 249 AD2d 275; *Matter of Certain Prop. on N. Riv. in City of N.Y.,* 118 App Div 865, 189 NY 508; *Matter of Village of Port Chester v Sorto,* 14 AD3d 570; *Kelo v New London,* 545 US 469; *Matter of Fisher [New York State Urban Dev. Corp.],* 287 AD2d 262; *Jackson v State of New York,* 213 NY 34; *Matter of City of New York,* 57 AD2d 954, 44 NY2d 974.)

*Carter Ledyard & Milburn LLP,* New York City (*Joseph M. Ryan* and *Susan B. Kalib* of counsel), for New York State Urban Development Corporation, amicus curiae. This Court should reverse the Appellate Division's decision to the extent that it awarded compensation for items of personal property which are not affixed to the premises (or are attached solely for stability purposes), are of standard design and are usable in any woodworking or carpentry operation. (*Potter v Cromwell,* 40 NY 287; *McRea v Central Natl. Bank of Troy,* 66 NY 489; *Matter of City of New York,* 278 NY 276; *Matter of Village of Port Chester,* 42 AD3d 465; *Rose v State of New York,* 24 NY2d 80; *Matter of City of New York,* 256 NY 236; *Banner Milling Co. v State of New York,* 240 NY 533, 269 US 582; *Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.],* 160 AD2d 705.)

*Milton H. Pachter,* New York City, and *Carlene V. McIntyre* for Port Authority of New York and New Jersey, amicus curiae. The order of the Appellate Division should be reversed because the decision of that Court created a new and virtually limitless test for identification of personal property as trade fixtures in eminent domain proceedings without precedent in the law of this state, which will have an adverse effect upon the public interest if not overruled by this Court. (*Rose v State of New York,* 24 NY2d 80; *Marraro v State of New York,* 12 NY2d 285; *Matter of City of New York,* 192 NY 295; *Matter of City of New York,* 278 NY 276; *Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.],* 160 AD2d 705; *Belinky v State of New York,* 24 AD2d 908; *Matter of Village of Port Chester,* 42 AD3d 465; *Matter of City of New York,* 27 AD2d 539; *Matter of City of New York,* 10 AD2d 498; *Jackson v State of New York,* 213 NY 34.)

**OPINION OF THE COURT**

Chief Judge KAYE.

At the heart of this condemnation proceeding is the question whether certain equipment qualifies as compensable trade fixtures.

### Factual Background

On July 20, 1998, the City of New York acquired title by eminent domain to property located at 3087 Third Avenue in the Bronx. The land was owned and occupied by Kaiser Woodcraft Corporation. For nearly 40 years Manfred Kaiser, founder and president of the corporation, operated a woodworking shop on the premises. In addition to seeking compensation for the underlying real estate, Kaiser's appraiser claimed that 147 items were compensable trade fixtures. This litigation concerns only those items.

The items claimed as trade fixtures included about 38 standard industrial woodworking tools.[1] Some were large (such as table saws—including, for example, a nine-foot-by-six-foot "Martin" table saw weighing at least 1,500 pounds—band saws, grinders, sanders, slitters, routers, drill presses, jointers, borers and planers). Others were heavy-duty hand tools (such as electric drills, nail guns, saber saws and pneumatic drills). Several of the machines, moreover, required the installation of beams beneath the floor to support their weight and dedicated electric wiring to provide the necessary power for their operation.

Kaiser's appraiser arrived at a final "sound value"—the cost of reproduction less depreciation—of about $577,000.[2] The City's appraiser, meanwhile, disputed that many of these claimed items were trade fixtures, and determined that claimant was entitled to a sound value of $128,936.

At trial, the witnesses were Manfred Kaiser and an appraiser for each side. Kaiser testified that because the premises were

---

1. Claimant's list included additional items that Supreme Court determined were noncompensable—an exterior fire escape; AT & T cordless telephone; wall-mounted electrical retractable reel, and wall-mounted lamp; ceiling fan; toilet facility structure and amenities; fire extinguisher, sawhorses; wall brackets, sand buckets, shelving unit; spray paint units, air hoses, metal cabinet; shelf, power strip, hand tool mounting strips, mounting board, small parts bin; shelving rack; disconnect switch; photocopier; sink, refrigerator, coffeemaker, microwave oven and hot plate. These items are not in issue before us.

2. The City's brief cites this figure as $564,270.

small, several machines were physically placed in an order that would maximize efficiency and mirror the flow of work. He conceded, however, that the items of equipment could each operate independently, no machine dependent on another. All of the apparatus could be moved to another location with similar electric or pneumatic power sources and used in a different manufacturing business. He further acknowledged that most of the equipment was of standard design, not built especially for him or according to any particular specifications. He also stated that while several items had been put on wheels or casters, if they were removed that would not alter the way the items functioned; additionally, some items were bolted to the floor, but only to steady them.

Claimant's appraiser testified that many of the items were classified as fixtures in part because they were used in Kaiser's business, even though they could be used in another woodworking shop or other business. In his view removal would cause a substantial loss in value in the secondhand market, and there would be additional costs to have the machinery removed, shipped and stored until it was sold. The City's appraiser, meanwhile, testified that these were items of standard design that could function with the same utility in another business, could be relocated without damage or loss of utility, were bought and sold through new and used commercial markets, were usable in a number of different environments, and therefore were not compensable trade fixtures.

Supreme Court determined that these claimed items were compensable trade fixtures and awarded $525,000 to Kaiser, almost the entire amount sought. The court stated that the "test to be used in evaluating a claim is the economic test of loss in value . . . [which] bridges the gap of annexation and removability alike and solves the problem of intention of permanence," and concluded that "[a]ll improvements which are erected for the purpose of trade or manufacture and can be removed without injury to the premises, for purposes of this case are compensable as trade fixtures" (Sup Ct, Bronx County, July 11, 2005, Silver, J., index No. 2667/98, op at 2-3).

On appeal, the City challenged the court's conclusion, urging that some of the items were noncompensable personalty[3] and

3. The City asserted that the following items were noncompensable personalty: belt sanders; numerous table saws with different attachments; a

that others were part of the underlying realty.[4] The Appellate Division modified Supreme Court's order, excluding a few additional items from the list of trade fixtures, and otherwise affirmed. First, the court excluded several items as part of the realty.[5] Second, the court identified several handheld tools of standard design that, although of industrial quality, retained the characteristic of personalty "despite their integral role in Kaiser's operation [since] [t]hey were not annexed to the property, the property was not adapted particularly to them, and there was no quality of permanence about their presence" (39 AD3d 131, 135 [2007]).[6] Third, the court concluded that while Supreme Court correctly treated certain aspects of the electrical system as trade fixtures, the building's basic electrical wiring cannot properly be classified as a trade fixture. None of the items excluded by the Appellate Division are before us on this appeal.

In the view of the Appellate Division, however, all other items were compensable trade fixtures:

> "Contrary to the City's contention, these claimed items of machinery satisfied the 'annexation, adaptability and permanence' test. They were an integral part of Kaiser's woodworking business, and most of the machines were large, with dedicated electrical lines that had to be installed by an electrician. The premises being small, the machines were arranged in a particular order to mirror the flow of work for

---

canvas bag in a dust collection unit; planers; a splitter machine; handheld power tools, such as drills, nail guns, saws and various routers (claimant characterized some of the drills and nail guns as pneumatic operated by air pressure); drill presses; a band saw; various racks with small tools and supplies, including blades, planer knives and router blades; a 40-gallon barrel-type dust collector; an edge bender/sander (claimant characterized it as an edge bender/brake); a table-mounted router; a portable transfer cart (characterized by claimant as a "panel handling lift unit"); a belt sander console unit; a 51-inch roller unit (claimant described it as pneumatic); a table-mounted punch press with a steel table; a wood lathe and set of chisels; a router with a steel table; a shaper with a steel table (claimant characterized it as a small router with table); a small storage safe; a pedestal-mounted tool grinder; and a wall-mounted telephone.

**4.** The City asserted that the following merged with the realty: plywood, concrete block and mortar used as security closures for six former windows; a custom-built front door; and electrical wiring.

**5.** These items include concrete blocks, plywood and sheet metal used to close what had been window openings in the building.

**6.** These included several electric drills, pneumatic nail guns, saber saws, pneumatic drills and routers.

maximum efficiency. Kaiser's expert also testified that these machines would suffer a substantial depreciation in value if removed. The evidence further showed that racks, installed by Kaiser in key places along the flow of work to hold clamps and other items needed during the production process, would have minimal value if removed. Dust collectors were also installed to accommodate numerous machines in the production process and were ancillary to them." (*Id.* at 134-135.)

The Appellate Division remitted the matter to Supreme Court to modify its $525,000 award (subsequently fixed at $506,791). Significantly, the Appellate Division also granted the City's motion for leave to appeal to this Court, certifying the following question of law: "Was the order of the Supreme Court, as modified by the decision and order of this Court, properly made?" We answer that question in the negative.

## Analysis

When the State takes property by eminent domain, the Constitution requires that it compensate the owner "so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred" (*City of Buffalo v Clement Co.*, 28 NY2d 241, 258 [1971]). Thus, "[a]n appropriation of land . . . is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures . . . . The value of the fixtures ought, therefore, to [be] considered in estimating the total value of the property appropriated by the State" (*Jackson v State of New York*, 213 NY 34, 36 [1914]).

These principles are easier stated than applied to the law of fixtures, which developed in the context of land sales, not eminent domain. The difficulty is apparent in the case of business machinery, which—though large, heavy and specific to a trade—often is removable and useful in another location. Removability, however, is not determinative in separating compensable fixtures from noncompensable personalty.

New York's earliest cases on trade fixtures (as they are called) address the rights of buyers and sellers, or heirs and donees, of real property. The plaintiff, usually the seller, typically brought suit to retain title to machinery after a contract of sale for real property had been executed. The court's task was to determine whether the machinery was so affixed that it became part of the

realty and passed to the buyer by execution of the contract of sale (*see e.g. Potter v Cromwell*, 40 NY 287 [1869]). For an item to be deemed a fixture, it had to satisfy a three-pronged test: actual annexation to the realty, adaptability to the use or purpose of the realty and the intention that the annexation be permanent (*id.*).[7]

In the century and a half this Court has grappled with fixtures issues, the three-pronged "annexation-adaptability-permanency" test has remained central—in this and most other states—to determining whether an item is a compensable trade fixture or noncompensable personalty. Under the first prong, annexation originally required that the chattel be physically attached to the realty, but that concept has been enlarged to include items that are "constructively annexed" to the land. Adaptability, meanwhile, contemplates both fitting the chattel to the particular purpose of the freehold, and the necessity of the chattel for complete use of the freehold, as when machinery is placed in a factory to perform a special purpose and is fitted for that purpose. The final element is an intention that attachment be permanent, requiring an objective interpretation of the installer's intention at the time of attachment. Even if the machinery could be removed, the critical factor was whether its installation was intended to be permanent (*see McRea v Central Natl. Bank of Troy*, 66 NY 489, 494 [1876]).

In *Jackson v State of New York* (213 NY 34 [1914, Cardozo, J.]), this Court first applied the law of fixtures to eminent domain, recognizing that certain economic factors—unique to a functioning business—must be considered as an enhancement

---

**7.** This test was actually first articulated by the Ohio Supreme Court in the oft-cited case *Teaff v Hewitt*, which declared:

"[T]he united application of the following requisites will be found the safest criterion of a fixture.

"1st. Actual annexation to the realty, or something appurtenant thereto.

"2d. Appropriation to the use or purpose of that part of the realty with which it is connected.

"3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold—this intention being inferred from the *nature* of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made" (1 Ohio St 511, 529-530 [1853]).

factor when valuing condemned property.[8] In *Jackson,* claimant's property had been used as a grain and bean warehouse that housed equipment and machinery used for business purposes. The Appellate Division determined that although most, if not all, of the items would be deemed fixtures as between vendor and vendee, that conclusion was inapposite in the context of eminent domain because the State—unlike a vendee—had no use for the attached machinery. This Court rejected that distinction, concluding that condemnation is a forced sale that places the State and the claimant in the position of vendee and vendor and "[o]n that basis [their] rights and duties . . . must be determined" (*id.* at 35).[9]

The Court revisited the subject in *Matter of City of New York (430 E. 59th St. Corp.)* (278 NY 276 [1938]), where a lessee maintained a silk ribbon manufacturing factory on property that was the subject of an eminent domain proceeding. The lessee sought compensation for machinery—including looms, harnesses and loose parts used in connection with the looms— utilized to run its business. The spare parts were standard articles purchased from dealers and the harnesses were interchangeable on the looms. The looms were attached to the floor by screws and bolts, but only to keep them from vibrating and shifting. The issue was whether the machinery constituted compensable trade fixtures, and in reaching that determination the Court further crafted the law of trade fixtures as it applies to machinery:

> "Machinery normally is personal property and is not deemed a fixture except where it is installed in such manner that its removal will result in material injury to it or the realty, or where the building in which it is placed was specially designed to house it, or where there is other evidence that its installation was of a permanent nature." (*Id.* at 281-282.)

---

**8.** As Judge Cardozo later noted in *New York, Ontario & W. Ry. Co. v Livingston* (238 NY 300, 305-306 [1924]), a just result also takes into account the interest of the public, which is to pay for the property taken.

**9.** Other state courts have drawn on *Jackson* in developing their own trade fixtures test in eminent domain proceedings. The New Jersey Supreme Court, for example, cited *Jackson* in adopting a "functional unit" test to determine whether removable machinery is compensable in eminent domain proceedings, holding that where "a building and industrial machinery housed therein constitute a functional unit, and the difference between the value of the building with such articles and without them[ ] is substantial, compensation for the taking should reflect that enhanced value" (*State by State Hwy. Commr. v Gallant*, 42 NJ 583, 590, 202 A2d 401, 405 [1964]).

Because there was no evidence that the looms were installed permanently, the Court declined to treat them as fixtures.

In its last major foray into the area of trade fixtures—*Rose v State of New York* (24 NY2d 80, 86 [1969]), a case primarily concerned with valuation rather than classification of fixtures— this Court recognized that "New York takes a broad view in evaluating what improvements are to be regarded as [trade] fixtures." After citing the above-quoted passage from *City of New York*, this Court for the first time added a fourth element to the trade fixtures test: "those improvements which are used for business purposes and which would lose substantial value if removed" (*id.*). It is this "lose substantial value" element that is the focus of the present appeal.

Kaiser argues that certain of its large machinery would lose substantial value both because it would sell for less on a secondhand market and because it was part of an integrated workplace physically ordered to maximize efficiency and mirror the flow of labor. Both arguments were embraced by the courts below in articulating the applicable test. This, however, misconstrues what the Court in *Rose* meant by "lose substantial value if removed."

Several decisions are illustrative of the meaning of the phrase. A substantial loss in value would occur, for example, where machinery was specially constructed for the plant, or the building was so designed that the subject items were functionally dependent on other items or on the building (*Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.]*, 160 AD2d 705, 706 [2d Dept 1990]). Another example would be equipment that functions as part of a truly integrated operation, such that the removal of one item diminishes the utility of remaining items (*Matter of City of New York [Fassler]*, 27 AD2d 810, 811 [1st Dept 1967]). Thus, in determining the compensability of items in a commercial television production studio, one court concluded that "where installed equipment functions in dependence on other installed equipment at the site, so that there is no 'realistic market' for the item once detached from the condemned property[,] compensation is warranted" (*In re 42nd St. Dev. Project v Hispanic Am. Tel. Cos., Inc.*, Sup Ct, NY County, Dec. 27, 1994, Parness, J., index No. 44507/91, op at 5).

In contrast, laundromat equipment was not considered part of an integrated plant simply because the machines *could* be

used together (*In re City of N.Y. [East 99th St.]*, NYLJ, Aug. 2, 1973, at 11, cols 2, 4-5 [Sup Ct, NY County, Waltemade, J.]):

"The removal of any one machine, while temporarily interrupting or curtailing production, does not close down the whole operation. Normal production resumes upon the installation of a replacement, used or new machine, which is manufactured to perform the same function, all of which are readily available in the machinery market . . .

"The 'umbrella like' approach[—]classifying every piece of equipment in the plant as a trade fixture and hence compensable—is to be rejected . . . Every prudent, sophisticated and successful ent[re]preneur seeks to *integrate or coordinate* the operations of an industrial or service venture because it is more economical, more efficient and more productive. 'Integrated', in a business sense, merely means that the different phases of the work being done are organized in an orderly fashion to unify and expedite the functional performance . . . To characterize everything in a well-organized industrial plant as a trade fixture is a pitfall to be avoided."

Kaiser's appraisal lists virtually every item in its woodshop, even the "kitchen sink"—all indisputably used in connection with the business. But use in connection with a business is not the test of compensability in New York; nor is efficiency of operation. The common thread of items qualifying under the "substantial loss" category of compensable fixtures is devaluation of functional utility if the item is removed.

Here, there is no claim of special design. What is in issue is standard woodshop equipment. Claimant argued that, because of the small size of his shop, he physically placed his machines in such an order as to maximize efficiency. The Appellate Division agreed that the items were an integral part of the woodworking business because they were large, with dedicated electrical lines, and arranged "to mirror the flow of work for maximum efficiency" (39 AD3d 131, 134-135 [2007]). We disagree. The fact that equipment is placed in a certain order to maximize efficiency does not define an integrated operation for purposes of determining a loss of substantial value.

Claimant's remaining argument—unchallenged by the City—is that many of the listed items will lose value because

they are worth less as secondhand goods than they are in his shop, and there are additional costs incurred to have the machinery removed, shipped and stored. The existence of these costs, similarly, does not qualify as losing substantial value. Claimant mistakes diminution in use with loss in value merely because each piece of equipment may be worth less used. Under such analysis, virtually every machine used in a business would be a compensable fixture, obliterating the distinction between fixtures and personalty.

A fair reading of the decisions below shows that the courts correctly identified the "annexation-adaptability-permanence" test along with the "lose substantial value" factor articulated in *Rose*. As we have explained, however, reliance on the secondhand value of individual items in this nonintegrated woodshop was error, and we cannot say whether in this case the items otherwise meet the test for trade fixtures.

Accordingly, the order of the Appellate Division should be reversed, with costs, the case remitted to Supreme Court for further proceedings in accordance with this opinion, and the certified question answered in the negative.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.