In the Matter of METROMEDIA, INC. (FOSTER & KLEISER DIVISION), Respondent, v TAX COMMISSION OF THE CITY OF NEW YORK et al., Appellants.

First Department, January 11, 1983

APPEARANCES OF COUNSEL

*Joseph A. Vogel* of counsel (*Leonard Olarsch* and *Frederick W. Turner* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel*, attorney), for appellants.

*Thomas F. Ryan* of counsel (*Arthur A. Segall* with him on the brief; *Hess Segall Guterman Pelz & Steiner*, attorneys), for respondent.

ALEXANDER, J.

We hold on this appeal that the advertising display frames erected by petitioner-respondent, Metromedia, Inc., on the elevated structures of the New York City Transit Authority are real property within the meaning of section 102 (subd 12, par [b]) of the Real Property Tax Law and are properly subject to taxation as such pursuant to section 300 of the Real Property Tax Law.

The facts here are not in dispute. Metromedia, through its subsidiary Foster-Kleiser, erects, leases and maintains outdoor advertising displays on property owned by the New York City Transit Authority (Authority). In 1964, Metromedia succeeded to the rights of El Advertising Company, Inc., which had an exclusive franchise agreement with the Authority that permitted the erection, maintenance and leasing of outdoor advertising displays on designated "El" structures. In 1971, at the expiration of that agreement, Metromedia and the Authority entered into a new 10-year contract continuing the exclusive franchise to erect these advertising displays on the Authority's structures.

These displays consist of two components: a 13 foot by 48 foot plywood sign "face" that contains the advertising message and a 14 foot by 48 foot steel frame upon which the plywood "face" is mounted.

The frames are constructed of vertical and horizontal steel members which are fastened to one another by nuts and bolts and, after preassembly, are hoisted and fastened by nuts and bolts, onto a metal plate that is welded to the "El" structure. There are also electrical connections installed to permit nighttime illumination of the advertisement display. The displays are attached with a high degree of security so as to withstand violent weather conditions of wind and rain. Although it takes about one week to install a frame, it takes no more than one day to remove it. Very few if any of the frames have ever been removed since the franchise was first granted in 1963.

The agreement specified that Metromedia would bear the cost of the installation of the displays and would also be

solely responsible for their maintenance. In exchange for · the franchise, Metromedia agreed to pay the Authority a minimum fee plus a fixed percentage of the gross income collected from its advertisers. The contract permitted Metromedia to amortize the installation costs of the displays over a five-year period, and granted to it an insurable interest in the displays.

At the expiration of the franchise term, the Authority would have the option to acquire title to fully amortized frames at no additional cost and to acquire title to frames not fully amortized "at a price equal to the unamortized portion of the cost thereof". However, in the event that the Authority did not exercise this option, Metromedia had an obligation under the contract to remove the displays.

Moreover, if during the term of the franchise agreement the Authority found the displays to present a danger or source of annoyance to the public, it could order removal or correction. Metromedia also had the option to remove and relocate the displays if advertising revenues were deemed insufficient. Although Metromedia has erected and maintained over 100 advertising sign displays throughout the city, only the 33 located in The Bronx are the subject of this appeal. Metromedia has never initiated the removal of these frames and only 10 of the sign frames have been removed in the past; seven when the Third Avenue El was torn down, three when Metromedia was directed to remove them during the Yankee Stadium renovation (two of these were subsequently reinstalled). Since the expiration of the Metromedia contract, the Authority has exercised its option to acquire these frames and none have been removed.

Commencing with the tax year 1974/1975 and in each of the five subsequent tax years, the City assessed all 33 of the sign frames as real property, subject to taxation pursuant to section 102 (subd 12, par [b]) of the Real Property Tax Law, which in relevant part provides:

"§ 102. Definitions

"When used in this chapter, unless otherwise expressly stated or unless the context otherwise requires * * *

"12. 'Real property', 'property' or 'land' mean and include * * *

"(b) Buildings and other articles and structures, substructures and superstructures erected upon, under or above the land, or affixed thereto, including bridges and wharves and piers and the value of the right to collect wharfage, cranage or dockage thereon, but shall not include bulk milk tanks or coolers installed upon a farm to hold milk awaiting shipment to market;

"(c) Surface, underground or elevated railroads, and railroad structures, substructures and superstructures, tracks and the metal thereon, branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private street or place".

Whether a property falls within this statutory definition is to be determined by the test enunciated by the Court of Appeals in *Matter of Consolidated Edison Co. of N.Y. v City of New York* (44 NY2d 536) i.e., a consideration of the degree of physical and functional connection to the land-based structure and the intention of the parties.

While it may be argued that a close question as to the taxability of the subject advertising frames franchised to petitioner is presented, we are persuaded that under the *Consolidated Edison* test, sufficient has been shown to justify finding that the tax assessment was proper, and that the judgment below should be reversed.

In concluding that these frames are not subject to taxation as real property under section 102 (subd 12, par [b]) of the Real Property Tax Law, both Special Term (106 Misc 2d 1001) and appellant place primary emphasis upon the fact that the frames are readily removable without substantial injury to the "El" superstructure. While physical removability and the ease thereof are factors to be considered under the *Consolidated Edison* test, they are not per se controlling, nor are they of paramount importance. Rather, the relative degree of removability must be compared with the functional permanence of the structure, and it must be considered whether the structure has any economic or utilitarian purpose other than the intended purpose for which it is affixed to the realty. Indeed, the very nature of the two-part construction of these frames bespeaks of the permanence of the fixtures. As noted above

those portions of the fixtures that carry the advertisement message are easily removable plywood faces while these frames that are the subject of this controversy, by contrast, are securely fastened to the "El" superstructure. Moreover the installation of lights for illumination, the fact that these structures have an economic life greatly exceeding their amortization period and the fact that over 90% of the structures have remained in place since at least 1975 and some even longer, are strong indications that the parties themselves consider the fixtures to be permanently affixed to the realty.

As pointed out by the court in *Marine Midland Trust Co. of Binghamton v Ahern* (16 NYS2d 656, 659, citing *McRea v Central Nat. Bank of Troy,* 66 NY 489, 495): "'The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached as upon the motive and intention of the party in attaching it.'"

Moreover, that "intent which is regarded as controlling is not the initial intention at the time the chattel is acquired, nor the secret or subjective intention of the party making the attachment, but rather the intention which the law will deduce from all the circumstances" (*Marine Midland Trust Co. v Ahern, supra,* p 659; see, also, *Matter of Capri Marina & Pool Club v Board of Assessors of County of Nassau,* 84 Misc 2d 1096).

Here the circumstances enumerated above lead ineluctably to the conclusion that these fixtures are "real property" within the contemplation of section 102 (subd 12, par [b]) of the Real Property Tax Law and are properly taxable as such.

Nor is there any merit to the claim of exemption pursuant to section 1275 of the Public Authorities Law. Section 300 of the Real Property Tax Law provides that "[a]ll real property within the state shall be subject to real property taxation * * * unless exempt therefrom by law". There is no warrant for finding here that these fixtures are exempt under section 1275 of the Public Authorities Law by reason of the fact that they are affixed to the property of the Authority. Clearly title to these structures was vested in Metromedia during the franchise period; it had an insur-

able interest therein and recovered substantial revenue therefrom. The contingent reversionary interest of the Authority apparently exercised by the acquisition of title upon the expiration of the franchise agreement does not in our view redound to the benefit of Metromedia so as to accord to it a tax exemption benefit; rather it served to relieve Metromedia of the expense of removing these structures at the expiration of the agreement as it was otherwise bound to do.

Accordingly, the order and judgment (one paper) of the Supreme Court, Bronx County (SHAPIRO, J.), entered May 11, 1981, which granted Metromedia's motion for summary judgment and denied the cross motion of the city Tax Commission for summary judgment should be reversed on the law, the motion by Metromedia should be denied and the appellant's cross motion for summary judgment should be granted and the assessment confirmed, without costs.

The appeal from the order of said court entered on or about September 3, 1981 which denied appellant's motion to renew its cross motion should be dismissed as moot, without costs.

MARKEWICH and BLOOM, JJ., concur with ALEXANDER, J.; MURPHY, P. J., and KUPFERMAN, J., dissent and would affirm on the opinion of SHAPIRO, J., at Special Term.

Order and judgment (one paper), Supreme Court, Bronx County, entered on May 11, 1981, reversed on the law, the motion by Metromedia denied and the appellant's cross motion for summary judgment granted and the assessment confirmed, without costs and without disbursements. The appeal from the order of said court entered on or about September 3, 1981, is dismissed as moot, without costs and without disbursements.