[907 NE2d 684, 879 NYS2d 806]

JOHN R. CONSEDINE, Respondent, v PORTVILLE CENTRAL SCHOOL DISTRICT et al., Appellants.

Argued February 11, 2009; decided April 7, 2009

## POINTS OF COUNSEL

*Hodgson Russ LLP,* Buffalo (*Hugh M. Russ, III,* and *Julia M. Hilliker* of counsel), for appellants. I. As a matter of law, the employment contract cannot guarantee the duration of plaintiff's employment. (*Matter of Averback v Board of Educ. of New Paltz Cent. School Dist.,* 147 AD2d 152, 74 NY2d 611; *Matter of Tyson v Hess,* 109 AD2d 1068; *Watson v Gugino,* 204 NY 535; *Martin v New York Life Ins. Co.,* 148 NY 117; *Chase v United Hosp.,* 60 AD2d 558; *Cartwright v Golub Corp.,* 51 AD2d 407; *Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Weiner v McGraw-Hill, Inc.,* 57 NY2d 458; *Matter of Bergamini v Manhattan & Bronx Surface Tr. Operating Auth.,* 62 NY2d 897; *Matter of Ause v Regan,* 59 AD2d 317.) II. Neither party intended to enter into a contract for a guaranteed duration.

*Office of General Counsel, School Administrators Association of New York State,* Latham (*John F. Kershko* and *Arthur P. Scheuermann* of counsel), for respondent. I. The Portville Central School District must pay John Consedine's salary for at least the three-year contract period because it never discontinued his probationary appointment. (*Matter of Lezette v Board of Educ., Hudson City School Dist.,* 35 NY2d 272.) II. The employment contract must be enforced because its terms are clear and unambiguous. (*South Rd. Assoc., LLC v International Bus. Machs. Corp.,* 4 NY3d 272; *Vermont Teddy Bear Co. v 538 Madison Realty Co.,* 1 NY3d 470; *W.W.W. Assoc. v Giancontieri,* 77 NY2d 157; *Jacobson v Sassower,* 66 NY2d 991; *Reiss v Financial Performance Corp.,* 97 NY2d 195.) III. The Portville Central School District's abolishment of John Consedine's position did not destroy his contractual right to payment of his salary for the specified three-year period. (*Flanagan v Board of Educ., Commack Union Free School Dist.,* 47 NY2d 613; *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers,* 40 NY2d 268; *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614; *Matter of Averback v Board of Educ. of New Paltz Cent. School Dist.,* 147 AD2d 152; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; *Matter of Candor Cent. School Dist. [Candor Teachers Assn.],* 42 NY2d 266; *Rooney v Tyson,* 91 NY2d 685.) IV. The contract must be enforced because

the Portville Central School District is accountable for its own agreements and business decisions. (*Reiss v Financial Performance Corp.*, 97 NY2d 195; *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470.)

*Jay Worona*, Latham, and *Kimberly A. Fanniff* for New York State School Boards Association, Inc., amicus curiae. I. Statutory law governing the employment of administrators like plaintiff-respondent precludes the formation of employment contracts of fixed duration. (*Matter of Averback v Board of Educ. of New Paltz Cent. School Dist.*, 147 AD2d 152.) II. Employment contracts, like the one herein, between school districts and administrators who are employed under Education Law § 3012 (1) (b) that purport to establish a fixed period of duration impermissibly impair the nondelegable authority of boards of education to consolidate and abolish positions for economic reasons. (*Matter of Young v Board of Educ. of Cent. School Dist. No. 6, Town of Huntington*, 41 AD2d 966; *Matter of Weimer v Board of Educ. of Smithtown Cent. School Dist. No. 1*, 76 AD2d 1046; *Board of Educ. of Cent. School Dist. No. 1 of Towns of Niagara, Wheatfield, Lewiston & Cambria v Niagara Wheatfield Teachers Assn.*, 54 AD2d 281, 41 NY2d 801; *Matter of Ryan v Ambach*, 71 AD2d 719.)

## OPINION OF THE COURT

Jones, J.

This appeal requires us to determine: (1) whether a school district can waive its statutory right to discharge a probationary school administrator at any time during the three-year probationary term (*see* Education Law § 3012 [1] [b]) by entering into a durational, three-year employment contract; and (2) if so, whether defendant Portville Central School District in fact waived that statutory right by executing the contract at issue here. We conclude that the first question should be answered in the affirmative, but hold, under the facts and circumstances of this case, that defendant school district did not waive its statutory right under section 3012 (1) (b).

In 2002, defendant school district created a new assistant principal position and appointed plaintiff, a tenured teacher in another school district, to the post for a probationary period of three years (January 1, 2003 through December 31, 2005). In December 2002, plaintiff and defendant school district executed an employment contract, which, in relevant part, stated, "[t]he District shall pay [plaintiff] for his services an annual salary of

$52,000[,] for the period of January 1, 2003 through December 31, 200[5]." In accordance with the foregoing, plaintiff began working as an assistant principal within the school district. Approximately six months later (in July 2003), defendant school district, citing budget constraints, eliminated plaintiff's assistant principal position and advised him that he would not be working in that capacity in the fall.

After serving a notice of claim, plaintiff commenced this breach of contract action against defendants seeking damages. Motion practice not relevant to resolution of this appeal ensued. After defendants answered, plaintiff moved (1) for summary judgment on his cause of action, (2) to dismiss defendants' defenses and (3) for sanctions. Defendants likewise moved for summary judgment to dismiss the complaint. Supreme Court denied the motions and ruled that a trial must be held to determine the intent of the parties.

After a bench trial, Supreme Court ruled that the employment contract was unambiguous, rendered judgment in plaintiff's favor and awarded him damages. The court stated, "as a matter of law, . . . the employment agreement between the parties is a contract for a three year period of employment beginning January 1, 2003 and ending on December 31, 2005." Further, the court stated, "notwithstanding Education Law § 3012, nothing prevented the [B]oard from extending plaintiff a three year contract . . . [A] school district is free to offer an administrator a three year probationary contract which cannot be terminated until the three years is over, and that is what occurred here." Supreme Court alternatively ruled that "[e]ven if the court could not make this determination as a matter of law, the verdict would be the same" because "the extrinsic evidence here demonstrates that a three year period was intended." The Appellate Division affirmed without opinion (49 AD3d 1290 [2008]). This Court granted defendants leave to appeal (10 NY3d 925 [2008]), and we now reverse.

On appeal to this Court, defendants contend that plaintiff cannot maintain a breach of contract claim because Education Law § 3012 (1) (b) expressly prohibits a school district from entering a contract guaranteeing a nontenured administrator employment for a certain duration. Defendants further argue that even if no statutory prohibition existed, the contract at issue does not guarantee plaintiff employment for a set duration. In their view, the contract merely established the terms and conditions of plaintiff's probationary appointment. Countering

defendants, plaintiff argues, in spite of the elimination of his position due to budget constraints, that defendant school district must pay plaintiff's annual salary for the specified three year period because the contract, by its plain terms, clearly and unambiguously accords plaintiff the right to such payments.

The current version of Education Law § 3012 (1) (b), enacted in 1975, provides:

"Principals, administrators, supervisors and all other members of the supervising staff of school districts . . . shall be appointed by the board of education . . . upon the recommendation of the superintendent of schools for a probationary period of three years.[1] The service of a person appointed to any of such positions may be discontinued at any time during the probationary period on the recommendation of the superintendent of schools, by a majority vote of the board of education."

In construing a statute,

"[t]he primary consideration of courts . . . is to ascertain and give effect to the intention of the Legislature. Of course, the words of the statute are the best evidence of the Legislature's intent. As a general rule, unambiguous language of a statute is alone determinative. Nevertheless, the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Pertinent also are the history of the times, the circumstances surrounding the statute's passage, and . . . attempted amendments. Varying concerns may bear on the weight to be given legislative history, but they do not justify abandoning this Court's long tradition of using all available interpretive tools to ascertain the meaning of a statute" (*Riley v County of Broome*, 95 NY2d 455, 463-464 [2000] [citations

---

1. Once the probationary term has expired, the superintendent of schools shall make a written report recommending appointees found to be competent, efficient and satisfactory for appointment on tenure (*see* Education Law § 3012 [2]). Appointees granted tenure cannot be removed except for cause after a hearing conducted pursuant to Education Law § 3020-a.

and internal quotation marks omitted]; *see also Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]).

Although the language of Education Law § 3012 (1) (b) plainly states that the service of an appointed school administrator may be discontinued by a board of education at any time during his or her probationary period, it does not, as defendants argue, expressly prohibit a board of education from entering into a durational, three-year employment contract with a probationary school administrator. Nor does the legislative history of section 3012 (1) (b) clearly indicate whether the Legislature intended to allow boards of education to (1) enter into durational contracts during the three-year probationary term or (2) waive their statutory right to discontinue a probationary appointee's service during the probationary term for any reason or no reason.

The legislative history of Education Law § 3012 (1) (b) primarily addresses whether school principals, administrators and supervisory personnel should have tenure. Prior to 1971, teachers, principals and other supervisors had the same tenure rights. Between 1971 and 1975, the Legislature, in an attempt to replace the tenure system, amended the statute three times (*see* L 1971, ch 116 [boards of education no longer authorized to grant tenure to school administrators]; L 1972, ch 953, § 3 [boards of education have discretion to enter into employment contracts "with any principal, supervisor, or member of the supervising staff for a period of from one to five years"]; L 1974, ch 952 [boards of education required to enter into employment contracts with administrative and supervisory personnel (other than superintendents) for one to three years for the first three years of employment in the position and from three to five years thereafter]).

In 1975, Education Law § 3012 (1) (b) was amended to its current version (*see* L 1975, ch 468, § 3). These amendments marked the removal of the language relating to employment contracts (*id.*) and reinstated a tenure-based system. Beyond the general objective of restoring tenure, there is nothing (such as a memorandum from an Assembly or Senate sponsor) to indicate any other legislative purpose of these amendments (*see* Bill Jacket, L 1975, ch 468). Stated differently, from the legislative history of the 1975 amendments, we cannot glean a clear legislative intent to prohibit school boards and districts from entering durational employment contracts with nontenured, probationary school administrators or supervisors.

After the Legislature adopted the 1975 amendments, the Commissioner of Education issued several decisions stating that Education Law § 3012 (1) (b)—and statutes with identical language pertaining to city school districts—only authorized school boards and districts to contract for terms of employment, not employment for a specific duration (*see Matter of Charland*, 32 Ed Dept Rep 291, 294 [1992]; *Matter of Savino*, 18 Ed Dept Rep 485 [1979]; *Matter of Hoffman*, 18 Ed Dept Rep 466, 468 [1979]). However, we do not view the Commissioner's decisions as persuasive because (1) the text and legislative history of section 3012 (1) (b) do not clearly support the Commissioner's conclusions and (2) they either do not reference and/or are inconsistent with this Court's relevant precedent construing other Education Law provisions (*see e.g. Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774 [1976]; *Matter of Candor Cent. School Dist. [Candor Teachers Assn.]*, 42 NY2d 266 [1977]).

In *Cohoes*, we stated that *"[w]hile a [school] board may legally agree to . . . forego its [statutory] right to discharge a probationary teacher during the period of probation*, under the Education Law a board cannot surrender its authority to terminate the employment of a nontenured teacher at the end of the probationary period" (40 NY2d at 777 [emphasis added]; *see also Candor*, 42 NY2d at 272). Although *Cohoes* resolved a question involving tenure rights of a teacher in the context of collective bargaining, there are important similarities between the statutes involved in *Cohoes* and the statute relied upon by defendants in this case. Specifically, in *Cohoes* we made the above-quoted statement regarding a board's ability to forgo its statutory discharge rights despite statutory provisions relating to teacher tenure rights stating that "[t]he service of a person appointed to any of such positions may be discontinued at any time during such probationary period" (*see* Education Law § 2509 [1] [a] [applicable to small city school districts]; § 2573 [1] [a] [applicable to large city school districts]; § 3012 [1] [a] [applicable to non-city school districts]). Education Law § 3012 (1) (b)—the statutory provision at issue here—contains the very same operative language as the teacher tenure statutes at issue in *Cohoes*.

Further, *Cohoes* implicitly holds that a school board or district may enter into a private employment contract with a teachers' union without express statutory authority for such action. This position is not only consistent with our precedent (*see Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v*

*Associated Teachers of Huntington*, 30 NY2d 122, 129 [1972] [Court rejected school board's argument "that, absent a statutory provision *expressly* authorizing a school board to provide for a particular term or condition of employment, it is legally prohibited from doing so"]), it is consistent with common sense: in performing their normal administrative and managerial functions, school boards and districts necessarily enter into different types of contracts that are not expressly authorized by statute.

Because the enforcement of a contract term negotiated by a school district and an individual, as opposed to a union, is at issue, the question we need to resolve is whether the school district could agree not to exercise its statutory right to terminate a school administrator during the probationary period. Based on the foregoing discussion of the statutory text and legislative history of Education Law § 3012 (1) (b), as well as *Cohoes*, there is no plain and clear restriction on a school district preventing it from entering such an agreement. Thus, we hold that a school district can waive its statutory right to discharge a probationary school administrator at any time during the three-year probationary term. Absent an express waiver, the school district retains the right. We now consider whether the contract at issue established a waiver of defendant school district's rights under section 3012 (1) (b).

"[W]hen parties set down their [contract] in a clear, complete document, their writing should . . . be enforced according to its terms" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004], quoting *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). A contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases (*see South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 277 [2005], citing *Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003]). Courts "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*Vermont Teddy Bear*, 1 NY3d at 475, quoting *Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]). "Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous" (*South Rd. Assoc.*, 4 NY3d at 278, citing *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]).

The contract at issue provides: "The District shall pay the Assistant Principal for his services at an annual salary of

$52,000[,] for the period of January 1, 2003 through December 31, 200[5]." Unlike the case at bar, in a private employment contract context where the strictures of the Education Law (or any other statutory scheme providing for probationary periods and/or tenure rights) are not present, this language could arguably be construed as creating a contract with a specific duration. Here, however, the question whether the language amounts to a waiver of rights must be determined in light of the public policy concerns attending the employment of school administrators and supervisors and a school district's statutory right to discontinue a probationary administrator's service at any time for any or no reason during the probationary period. Specifically, where, as here, public policy concerns are implicated, a school district will not be deemed to have waived its statutory rights under the Education Law without an explicit agreement between the parties or compelling evidence that the school district made a conscious decision to do so (*see Matter of Buffalo Police Benevolent Assn. [City of Buffalo]*, 4 NY3d 660, 663-664 [2005]).

Applying the foregoing, we hold that the operative contractual language is simply too equivocal to establish that defendant school district consciously and expressly agreed to waive its statutory right under Education Law § 3012 (1) (b). Moreover, the trial testimony did not yield compelling evidence that such a waiver was contemplated by the parties.[2]

Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur; Chief Judge LIPPMAN taking no part.

Order reversed, etc.

---

**2.** Because we hold that no waiver occurred here, we express no view on what impact, if any, a school district's conscious and express waiver of its Education Law § 3012 (1) (b) rights would have on an employee's rights where the district abolished the employee's position for economic reasons.