Monticello Raceway Management, Inc., Appellant-Respondent, v Concord Associates L.P., Respondent-Appellant. [962 NYS2d 497]—

Lahtinen, J. Cross appeals from an order of the Supreme Court (Melkonian, J.), entered November 29, 2011 in Sullivan

---

2. The tax parcels consist of 13.85, 24.94 and 28.15 acres.

County, which, among other things, denied plaintiff's cross motion for summary judgment.

Plaintiff and defendant disagree regarding the interpretation of a reimbursement provision of a contract. Plaintiff owns and operates Monticello Raceway, which is referred to as a "racino" because gambling activities at the site include harness horse racing and video gambling machines (hereinafter VGMs). Defendant owns the nearby Concord Resort and, as part of a redevelopment program, intended to establish a racino on its property. Monticello Harness Horsemen's Association (hereinafter Association) is the bargaining agent of the owners, trainers and drivers of the harness horses.

In contemplation of opening a racino at defendant's resort within about two years, plaintiff, defendant and the Association entered into a detailed contract on July 1, 2008. As relevant to the issues on appeal, the agreement provided a minimum annual amount to be paid by plaintiff to the Association and, until the racino started operating at defendant's resort or for the first two years of the agreement,[1] that amount would be the greater of (1) 8.75% of the net win from VGMs at the Monticello Raceway or (2) $5 million. The contract also provided that, in the event there was a VGM shortfall (that is, the 8.75% was less than $5 million), defendant would reimburse plaintiff the amount of the shortfall. There was a shortfall for each of the two years, as the 8.75% of VGM wins was allegedly under $5 million by about $122,500 in the first year and $185,000 in the second year. When plaintiff sought reimbursement, defendant took the position that its reimbursement obligation applied only if the 8.75% of VGM wins fell under $5 million for the cumulative period of the entire two years. Since the total VGM wins percentage for the two years combined was nearly $9,700,000 (far exceeding $5 million), defendant contended that it did not owe any money to plaintiff under the contract.

Plaintiff commenced this action for, among other things, breach of contract. In lieu of an answer, defendant moved to dismiss pursuant to CPLR 3211 (a) (1) and (7) contending that the complaint failed to state a cause of action and that the terms of the contract constituted a defense founded upon documentary evidence. Plaintiff cross-moved under CPLR 3211 (c) and 3212, requesting Supreme Court to treat the motion as one for summary judgment and rule in its favor. Supreme Court granted

---

1. The relevant part of the agreement actually ran for up to 25 months, from July 1, 2008 to July 31, 2010, unless defendant earlier constructed its racino and received licensing. The proposed project, however, was not completed.

plaintiff's request to treat its cross motion as one for summary judgment. However, on the merits of the motions, Supreme Court denied both parties' motions finding that the disputed contractual language was ambiguous and that factual issues existed regarding the extrinsic proof.[2] Both parties appeal.

"[W]hen parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks and citation omitted]). The contract "should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases" (*Bailey v Fish & Neave*, 8 NY3d 523, 528 [2007]), and "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*id.* [internal quotation marks and citations omitted]). "Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous" (*Consedine v Portville Cent. School Dist.*, 12 NY3d 286, 293 [2009] [internal quotation marks and citations omitted]).

Defendant's pertinent obligation to plaintiff is set forth in paragraph 31 (a) of the agreement as follows: "Notwithstanding anything to the contrary contained in this Agreement, so long as the Term of this Agreement has not expired, for the period commencing on the date of execution of this Agreement through and including the Guaranty Date, *[defendant] hereby agrees to reimburse [plaintiff] for, and guarantees to the Association, any and all amounts paid by [plaintiff] to the Association with respect to the Guaranteed VGM Purse Contribution* pursuant to Paragraph 2 (b) of Exhibit B to this Agreement in excess of 8.75% of the net win from [VGM] activities at the Monticello Raceway" (emphasis added). Exhibit B to the contract sets forth in paragraph 1 that plaintiff's "Annual Purse Payment for each year" includes "[t]he Horsemen Alternative Gaming Revenue Share," which is defined in paragraph 2 (b) as 8.75% of net win from VGM activities. Paragraph 2 (b) continues, providing: "Notwithstanding the foregoing, that, so long as this Agreement has not been terminated pursuant to Section 25 hereof and the Term of this Agreement has not expired, (I) for the period from the execution of this Agreement through and includ-

---

2. Plaintiff's second cause of action for unjust enrichment was dismissed and plaintiff has not challenged that dismissal.

ing the Start Date,[3] the [Association] shall receive the greater of a) the 'Horsemen's Alternative Gaming Revenue Share' as defined above [as 8.75% of the net win from VGMs] OR b) [$5 million] (the 'Guaranteed VGM Purse Contribution')."

Reading the various relevant provisions reveals that defendant was obligated to reimburse plaintiff for the VGM shortfall incurred during each of the two years of the contract. Paragraph 1 of Exhibit B to the contract establishes the requirement of an annual purse payment by plaintiff to the Association. As per paragraph 2 (b) of Exhibit B, that payment for the years in question was required to be at least $5 million. This was referenced as the "Guaranteed VGM Purse Contribution" and was paid by plaintiff in each year in question because of an alleged shortfall in the net wins from VGMs. By its plain terms, paragraph 31 (a) required defendant to reimburse plaintiff for these Guaranteed VGM Purse Contributions paid by plaintiff to the Association. The fact that defendant's obligation is not separately and specifically spelled out as an annual obligation is unavailing to its position. The contract required defendant to reimburse plaintiff for this payment to the Association, and plaintiff's obligation to the Association was an annual one.

Although plaintiff is entitled to summary judgment on the issue of liability, the issue of damages cannot be resolved on this record. Defendant disputes the amounts purportedly paid as well as the underlying VGM net wins during the relevant years. At this early procedural point in the litigation, and in light of the fact that the pertinent information appears to be within the exclusive possession of plaintiff, defendant is entitled to discovery on the issue of damages.

The remaining issues, to the extent not rendered academic by our decision, are unavailing.

Peters, P.J., Stein and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's cross motion for summary judgment; cross motion granted to the extent of awarding partial summary judgment to plaintiff on the issue of liability on the breach of contract cause of action; and, as so modified, affirmed.

---

**3.** "Start Date" was set forth as when a certificate of occupancy and necessary licenses were obtained for defendant's site, which were never obtained in this case. If defendant had started to operate a racino, yearly specific amounts of compensation to the Association were provided for up to 20 years.