This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 60
In the Matter of Tayinha Banos,
            Respondent,
        v.
John Rhea &c., et al.,
            Appellants,
et al.,
            Respondent.
------------------------------
No. 61
In the Matter of Viola Dial,
            Respondent,
        v.
John Rhea, &c.,
            Appellant,
690 Gates, LP,
            Respondent.


Case No. 60:
        Melissa R. Renwick, for appellants.
        Kathleen Brennan, for respondent Banos.

Case No. 61:
        Melissa R. Renwick, for appellant.
        Michael Weisberg, for respondent Dial.
        Robert H. Gordon, for respondent 690 Gates, LP.


STEIN, J.:

        The principal issue raised in these cases is when the

statute of limitations begins to run with respect to a tenant's

legal challenge to a termination of Section 8 benefits by

respondent New York City Housing Authority (NYCHA).  We hold

- 1 -

that, pursuant to a federal consent judgment, the statute begins to run upon the tenant's receipt of a "T-3 letter," regardless of whether NYCHA has proven that it mailed other notices required by the consent judgment to be sent to the tenant before the T-3 letter.  Because petitioners did not commence these proceedings within four months of their receipt of the respective T-3 letters, we reverse and dismiss the petitions in both cases.

I.

Pursuant to Section 8 of the US Housing Act of 1937 (42 USC § 1437f [hereinafter Section 8]), the federal government provides rent subsidies to low-income individuals and families to enable them to rent privately-owned housing.  NYCHA has a contract with the federal government to administer the Section 8 program in New York City (see 42 USC § 1437f [b] [1]).  To partially resolve a federal class action brought by a group of tenants alleging due process violations committed by NYCHA in the termination of their Section 8 benefits, the parties to that action entered into what is called the Williams first partial consent judgment (see Williams v New York City Hous. Auth., Dist Ct, SD NY, 81 Civ 1801, Ward, J., 1984).  It is undisputed that the consent judgment sets forth a specific procedure that NYCHA must follow when terminating benefits.

> "First, after a preliminary determination
> that there exists a basis for termination,
> NYCHA must send the participant a warning
> letter specifically stating the basis for the

termination and, if appropriate, seeking the participant's compliance.  Thereafter, if the conditions which led to the preliminary determination have not been remedied within a reasonable time, NYCHA must send a second written notice, the Notice of Termination [called a T-1 letter], by certified and regular mail, stating the specific grounds for termination and informing the participant that he or she may request a hearing (and an optional pre-hearing conference).  If the participant does not respond to the Notice of Termination or T-1 letter, NYCHA is required to mail a Notice of Default [called a T-3 letter] advising the participant that the rent subsidy will be terminated and the grounds therefor and affording the participant another opportunity to request a hearing.  If the participant takes no action after the Notice of Default or T-3 letter, the rent subsidy will be terminated on the 45th calendar day following the date of mailing of the Notice of Default.  If, however, a participant requests a hearing after the 45-day period, the participant's default may be reopened 'upon a showing of good cause.'"

(Matter of Fair v Finkel, 284 AD2d 126, 127-128 [1st Dept 2001] [footnotes omitted]).  Both of the cases before us involve the interpretation of the parameters of the Williams consent judgment.

## Matter of Banos v Rhea

NYCHA terminated the Section 8 benefits of petitioner Tayinha Banos effective June 30, 2010.  Banos alleged that she never received a warning letter, T-1 letter or T-3 letter. However, she acknowledged receiving something from her landlord in June 2010 that caused her to send an inquiry to NYCHA, and

further acknowledged that she received a responsive letter from NYCHA in early July 2010, informing her that her benefits had been terminated.  In February 2012, Banos commenced this CPLR article 78 proceeding against NYCHA and its then-chair, John Rhea[1] (hereinafter collectively referred to as NYCHA), seeking to annul NYCHA's determination as arbitrary, capricious, in violation of due process and contrary to law, and to reinstate her benefits.

NYCHA moved to dismiss the proceeding as time barred. In its motion papers, NYCHA provided affidavits from two employees setting forth the agency's mailing procedures for the T-3 letter.  The affidavits were supported by a copy of the T-3 letter sent to Banos, a mail log, and a United States Postal Service (USPS) Track and Confirm report.  Although NYCHA's motion papers addressed the mailing of the T-3 letter to Banos, they did not mention anything about having sent her a warning letter or a T-1 letter.

Supreme Court denied NYCHA's motion, finding that, because NYCHA failed to show that it strictly complied with the consent judgment's requirement to send all three notices, the statute of limitations did not begin to run.  The court then provided NYCHA time to submit an answer to the petition.  The Appellate Division affirmed (111 AD3d 707 [2nd Dept 2013]).

---

[1] Rhea is NYCHA's former chair; Shola Olatoye is the current chair.

Agreeing that the record failed to show that NYCHA mailed the warning letter and the T-1 letter, the majority concluded that "NYCHA's termination of the petitioner's Section 8 benefits was in violation of lawful procedure" and, therefore, the statute of limitations did not begin to run (id. at 708).  The dissent would have dismissed the petition on the basis that the Williams consent judgment specifically provided that the time to commence a proceeding to challenge a termination of benefits began to run from receipt of the T-3 letter (see id. at 708-714 [Miller, J., dissenting]).  According to the dissent, Banos' bare assertion that she did not receive the T-3 letter was insufficient to rebut the presumption of delivery created by NYCHA's proof, and she failed to commence this proceeding within four months of receipt. The Appellate Division granted NYCHA leave to appeal, certifying the question as to whether its decision was correct.

## Matter of Dial v Rhea

NYCHA contends that it mailed a T-3 letter to petitioner Viola Dial in August 2007 by regular and certified mail.  In contrast, Dial denies receiving any warning letter, T-1 letter or T-3 letter.  However, Dial's landlord, respondent 690 Gates L.P., made her aware in December 2008 that NYCHA had terminated her Section 8 benefits.  Dial sent letters to NYCHA in December 2008 and September 2010, seeking an explanation and reinstatement of her benefits.  NYCHA promptly responded to each

letter, declining Dial's requests for reinstatement and informing her that her benefits were terminated effective October 31, 2007.

In May 2011, Dial commenced this CPLR article 78 proceeding against Rhea, as chair of NYCHA (who we generally refer to as NYCHA, which is the real party in interest) and 690 Gates.  NYCHA moved to dismiss the petition as time barred.  To demonstrate that it mailed the T-3 letter to Dial, NYCHA submitted affidavits from two of its employees, as well as a reply affidavit, a copy of the T-3 letter mailed to Dial and mail logs.  To explain the absence of records specifically pertaining to the mailing of the T-3 letter to Dial, NYCHA also proffered information indicating that the USPS Track and Confirm system maintains records for certified mailings for only two years.

Supreme Court denied NYCHA's motion to dismiss and granted the petition on the merits, annulling NYCHA's determination and ordering reinstatement of Dial's benefits retroactive to September 1, 2007.  The court found that NYCHA did not comply with the notice requirements, as it failed to serve a warning letter and submitted insufficient proof that T-1 and T-3 letters were properly mailed to Dial.  The Appellate Division affirmed, concluding that NYCHA bore the burden of showing that it served all three notices before its determination could be considered final and binding on a tenant (111 AD3d 720 [2nd Dept 2013]).  Finding that NYCHA failed to show that it mailed two of the three notices (the warning letter and T-1 letter), the

Appellate Division determined that the statute of limitations did not begin to run.  The court implicitly found that NYCHA demonstrated that it mailed the T-3 letter to Dial (see id. at 722-723).  The Appellate Division granted NYCHA leave to appeal, certifying the question as to whether its decision was correct.

II.

All of the parties agree that a four-month statute of limitations applies to proceedings challenging NYCHA's termination of Section 8 benefits (see CPLR 217 [1]).  There is also no question that the time to commence such a proceeding begins to run when the agency determination "becomes final and binding upon the petitioner" (CPLR 217 [1]; see Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34 [2005]).  The Williams consent judgment specifically addresses when a NYCHA determination to terminate Section 8 benefits becomes final and binding.  The question before us revolves around the proper interpretation of the applicable provision of that consent judgment.

In general, a stipulation or consent judgment is a contract between parties and must be construed according to the rules of contract interpretation.  Stipulations embody a compromise between competing parties that, if not ambiguous, must be construed according to their plain language, without relying on what a party may have been able to prove in litigation (see

United States v ITT Continental Baking Co., 420 US 223, 236-237 [1975]; Matter of Fox Ridge Motor Inn, Inc. v Town of Southeast, N.Y., 85 AD3d 785, 786 [2nd Dept 2011]).  Whether a contract is ambiguous is a question of law, and courts may not resort to extrinsic evidence to aid in interpretation unless the document is ambiguous (see Consedine v Portville Cent. School Dist., 12 NY3d 286, 293 [2009]).

The plain language of the Williams consent judgment draws a distinction between what is required to commence the limitations period for a challenge to a termination of Section 8 benefits, on the one hand, and what is required for NYCHA to establish the merit of such a termination -- including NYCHA's full compliance with the notice requirements -- on the other hand.  The consent judgment addresses the statute of limitations in paragraph 22 (f) as follows: "[F]or the purposes of Section 217 and Article 78 of the [CPLR], the determination to terminate a [Section 8] subsidy shall, in all cases, become final and binding upon receipt of the Notice of Determination pursuant to paragraph '22 (a)' hereinabove, or the Notice of Default, pursuant to paragraph '3 (e)' above" -- i.e., the T-3 letter -- with an exception that is not relevant here.[2]

NYCHA contends that the plain language of paragraph 22 (f) states that a determination is final and binding upon the

---

[2] The Notice of Determination mentioned in paragraph 22 (a) concerns a determination made after a hearing, which is also not relevant here.

tenant's receipt of the T-3 letter, without any mention of the warning letter or T-1 letter.  According to NYCHA, the purpose of the reference to paragraph 3 (e) is simply to specify or clarify the particular Notice of Default (the T-3 letter) that will be final and binding, as the consent judgment also refers to another type of default (see paragraph 22 [d] [referencing a tenant's default in appearing at a scheduled hearing]).  Hence, NYCHA argues that, to succeed on its statute of limitations defense, it need prove only that a tenant received the T-3 letter and failed to commence a proceeding to challenge the termination of Section 8 benefits within four months of the date of such receipt.

In contrast, Banos and Dial contend that the phrase in paragraph 22 (f) "pursuant to paragraph '3 (e)' above" should be interpreted to mean that the Notice of Default must have been properly issued after strict compliance with all of the requirements of paragraph 3 (e).  That paragraph begins, "[i]n the event that the participant does not respond to the notice as provided for in Section 3 (b) above, a Notice of Default, in Spanish and English, shall be mailed to the participant." According to Banos and Dial, one must then go to paragraph 3 (b), referenced in paragraph 3 (e), which provides that "if the conditions which led to the preliminary determination have not been remedied within a reasonable period of time after the mailing of the warning letter, a notice in Spanish and English [i.e., the T-1 letter] shall be sent to the participant by

certified mail with a copy by regular mail." Paragraph 3 (b) also sets forth the information that must be included in the T-1 letter. The warning letter mentioned in paragraph 3 (b) is described in paragraph 3 (a). The introductory language to paragraph 3 provides that these steps involving the three letters must be taken after the preliminary determination to terminate benefits that is described in paragraph 2. Thus, under the reasoning urged by Banos and Dial, in order to interpret the meaning of paragraph 22 (f), we would also be required to construe paragraphs 2 and 3 (a), (b) and (e) -- that is, to understand paragraph 22 (f), we must incorporate all of paragraph 3 (e), which, in turn, refers to paragraph 3 (b), which indirectly refers to paragraph 3 (a), which indirectly refers to paragraph 2.

Although all portions of a contract should be read together to determine its meaning (see Matter of Bombay Realty Corp. v Magna Carta, 100 NY2d 124, 127 [2003]), courts may not distort the meaning of words, under the guise of interpretation, so as to create a new contract (see Consedine, 12 NY3d at 293). In the Williams consent judgment, paragraph 3 contains the notice requirements, while paragraph 22 (f) addresses the statute of limitations. Paragraph 3 does not lose its meaning if it is interpreted alone, as establishing the procedure for notices, without being fully incorporated into paragraph 22. Similarly, the language of paragraph 22 (f) makes sense on its own, without

circuitously winding through paragraph 2 and three subdivisions of paragraph 3 for its interpretation.  Under the plain language of paragraph 22 (f), a determination to terminate benefits becomes final and binding on a tenant for statute of limitations purposes upon receipt of the T-3 notice.  Moreover, the purpose of the reference in paragraph 22 (f) to paragraph 3 (e) is to clearly identify the T-3 letter as the relevant notice; there is no indication that the reference was intended to incorporate all of the procedural requirements contained in paragraph 3 as conditions precedent to the commencement of the limitations period.  Stated simply, receipt of the T-3 letter, alone, starts the clock.

Contrary to the arguments advanced by Banos and Dial, our interpretation does not defeat the purpose of the Williams consent judgment, which is to prevent the unnecessary termination of Section 8 benefits.  The T-3 letter informs the tenants that Section 8 benefits will be terminated in 45 days, provides a reason for the termination, and informs the tenants that they may still request a hearing within 45 days (in which case benefits will continue until a final determination is made), that a challenge received after 45 days will be considered if "good cause" is shown, and that, if they wish to challenge the determination in court, they must do so within four months of the date of the notice.  While the consent judgment provides the added protection of two additional notices -- without which a

termination of benefits will not be upheld on the merits if timely challenged -- the T-3 letter contains sufficient information to put tenants on notice of the termination and their rights with respect thereto, and to advise them as to how to proceed, such that it is not a deprivation of due process to designate that document as the trigger for commencement of the statute of limitations.

Nor will our interpretation allow or encourage NYCHA to disregard its obligation to provide all notices required by the Williams consent judgment. Inasmuch as the limitations period does not begin to run until the tenant's receipt of the T-3 letter, at least that notice must be given before NYCHA can validly raise timeliness as a defense to any challenge by a tenant. Further, NYCHA has no incentive to fail to provide the other two required notices, as such failure will result in NYCHA losing any timely challenge on the merits and, consequently, annulment of its determination to terminate benefits and potential reinstatement of such benefits (see Matter of Fair, 284 AD2d at 128-129; see also Matter of Robinson v Martinez, 308 AD2d 355, 355 [1st Dept 2003]). In any event, the issue of the merits of NYCHA's determination is entirely separate and distinct from the question of timeliness. In other words, the question of whether NYCHA followed proper procedure in reaching its determination relates to the merits of the underlying petition, but does not affect the finality of its determination for statute

of limitations purposes.[3]  To hold otherwise would allow a review
of the merits -- i.e., finding that NYCHA's determination was in
"violation of lawful procedure" pursuant to CPLR 7803 (3) --
either before deciding the dispositive statute of limitations
issue or despite the petition being untimely.[4]

For these reasons, we hold that the timeliness of a
proceeding against NYCHA challenging a termination of Section 8
benefits is measured from the tenant's receipt of the T-3 letter,
regardless of whether NYCHA proves that it mailed the other two
notices (see Matter of Parks v New York City Hous. Auth., 100
AD3d 407, 408 [1st Dept 2012]; Matter of Lopez v New York City
Hous. Auth., 93 AD3d 448, 448-449 [1st Dept 2012]; Matter of
Fernandez v NYCHA Law Dept., 284 AD2d 202, 202 [1st Dept 2001]).
While this rule may result in the dismissal of petitions for some

---

[3]  Notably, even arguments concerning violations of due
process may be precluded if a legal challenge is untimely (see
Solnick v Whalen, 49 NY2d 224, 227 [1980]; Matter of Saunders v
Rhea, 92 AD3d 602, 603 [1st Dept 2012]).

[4]  The dissent begins by stating that the Williams consent
judgment established a three-step procedure for terminating
Section 8 benefits and that "[t]he majority opinion effectively
creates a one-step procedure for terminating Section 8 benefits"
(dissenting op at 1).  That statement reflects a
misinterpretation of our decision, and conflates a merits
determination with a conclusion concerning the timeliness of a
challenge to a termination of benefits.  We, like the dissent,
recognize the consent judgment's three-step procedure for
terminating benefits; however, unlike the dissent, we also
recognize the consent judgment's reliance on just the final one
of those steps for determining when the statute of limitations
begins to run.

tenants with otherwise meritorious claims, such a result is inherent in any limitations period.  However, statutes of limitations embody an important public policy of providing finality for agency determinations and reflect a legislative judgment to shield parties from having to defend against stale claims (see Zumpano v Quinn, 6 NY3d 666, 673 [2006]; Matter of Best Payphones, Inc., 5 NY3d at 34 [recognizing a policy reason for abbreviated time frames applicable to CPLR article 78 proceedings that "the operation of government agencies should not be unnecessarily clouded by potential litigation"]).  In arriving at the terms of the Williams consent judgment, this policy -- set forth in paragraph 22 (f) -- was evidently balanced against the policy underlying the procedural requirements of paragraphs 2 and 3 for a valid termination of benefits.[5]

Turning to the contentions of Banos, Dial and 690 Gates that NYCHA failed to establish that it properly mailed the T-3 letters, paragraph 22 (g) of the Williams consent judgment contains a rebuttable presumption that the T-3 letter is received "on the fifth date following the date of mailing."  In each case before us, the Appellate Division found, either explicitly or implicitly, that NYCHA established proper mailing of the T-3

---

[5] In fact, NYCHA asserts that, while the tenants in Williams gained a three-step notice procedure to terminate Section 8 benefits that is much broader than the notice required by federal law (see 24 CFR 982.555 [c] [2]), NYCHA's only real gain in the consent judgment was the delineation of the T-3 notice as the definitive starting point for limitations purposes.

letter (see 111 AD3d at 708; id. at 711 [Miller, J., dissenting]; 111 AD3d at 722-723).  Those factual determinations are supported by the record in each case, and each petitioner's bare denial of receipt is insufficient to rebut the presumption contained in paragraph 22 (g) of the consent judgment (see Kihl v Pfeffer, 94 NY2d 118, 122 [1999]; Nassau Ins. Co. v Murray, 46 NY2d 828, 829-830 [1978]; Matter of Hudson House, LLC v New York State Div. of Hous. & Community Renewal, 89 AD3d 1084, 1084 [2nd Dept 2011]).  Thus, the statute of limitations began to run five days after mailing of the T-3 letters, notwithstanding the absence of proof regarding mailing of the warning letters or T-1 letters. The parties do not dispute that, under this interpretation of the consent judgment, each of these proceedings was untimely if measured from the applicable date.[6]

Accordingly, in each case, the order of the Appellate Division should be reversed, without costs, and NYCHA's motions to dismiss the petitions as time-barred granted.  In Matter of Banos, we answer the certified question in the negative and, in Matter of Dial, it is unnecessary for us to answer the certified question.

_____

[6] Based on our analysis, we need not reach NYCHA's alternative arguments that the statute of limitations starts running when a tenant knew or should have known of the termination of benefits, or that laches bars either of these proceedings.

Matter of Banos v Rhea; Matter of Dial v Rhea

Nos. 60 & 61

FAHEY, J.(dissenting):

I respectfully dissent.  A consent judgment is a contract between parties.  A three-step termination procedure for Section 8 benefits was established to resolve Williams v New York City Hous. Auth. (Dist Ct, SD NY, 81 Civ 1801, Ward, J., 1984). The majority opinion effectively creates a one-step procedure for terminating Section 8 benefits.  The result is that the protections agreed to in Williams are meaningless.

Indeed, in my view, the consent judgment by which Williams was resolved must be read such that a determination to terminate Section 8 benefits is made only upon the proper mailing of all three of the notices demanded by that judgment. Consequently, in Matter of Banos v Rhea I would conclude that the statute of limitations was not triggered, and I would thus affirm the order of the Appellate Division and answer the certified question in the affirmative.  In Matter of Dial v Rhea, I would reach the same conclusion with respect to the statute of limitations but, because respondent John Rhea[1] should have been permitted to answer the petition, I would modify the Appellate Division's order by vacating the part of the judgment of Supreme

_____

   [1]    Rhea was sued in both proceedings in his capacity as chairman of NYCHA.  Similar to the tack taken by the majority, and for ease of review, from this point forward both Rhea and NYCHA will be referred to as NYCHA.

- 1 -

Court granting the petition and remitting to that court for further proceedings, and otherwise affirm.

I.

"Under the Section 8 program, 42 USC § 1437f, [NYCHA] provides rental subsidies to landlords on behalf of indigent tenants" (Williams v New York City Hous. Auth., 975 F Supp 317, 319 [SD NY 1997]).  In March 1981, plaintiff Diedre Williams commenced an action seeking

> "injunctive relief to challenge on procedural due process grounds NYCHA's methods of terminating Section 8 assistance.  Williams contested NYCHA's termination of Section 8 payments to landlords without prior notice to tenants or a pre-termination hearing.  In addition, she contested the fact that, because NYCHA was not a party to eviction proceedings brought against tenants in Housing Court for non-payment of NYCHA's share of rent, tenants were unable to litigate the validity of NYCHA's termination of assistance.  Over a period of two years, several other plaintiffs intervened in the proceedings, and on August 10, 1983, the [United States District Court for the Southern District of New York] granted [the] plaintiffs' motion for class certification" (id.).

Williams was eventually resolved through two partial consent judgments, the first of which (generally, consent judgment) is germane to both of the appeals now before us.[2]  The

_____

     [2]     Thus far, the background facts have been taken from an opinion of the District Court awarding the plaintiffs in Williams attorney's fees pursuant to 42 USC § 1988 following the resolution of that action through, inter alia, the consent judgment (see Williams, 975 F Supp at 319).

circumstances of these cases require the full recitation of the

relevant parts of the consent judgment:

> "1.   Termination of the subsidy or
> eligibility of any participant in the Section
> 8 Housing Assistance Program . . .
> administered by [NYCHA] . . . shall be made
> only after a determination in accordance with
> the procedures and provisions herein. . . .
>
> "3.   After [a] preliminary determination [to
> terminate a Section 8 subsidy or eligibility
> therefor] is made, [NYCHA] shall take the
> following steps:
>
> "(a)   a warning letter in Spanish and English
> will be sent to the participant, by regular
> mail, specifically stating the basis for the
> proposed adverse action; and, where
> appropriate, seeking the participant's
> compliance;
>
> "(b)   thereafter, if the conditions which led
> to the preliminary determination have not
> been remedied within a reasonable period of
> time after the mailing of the warning letter,
> a notice in Spanish and English shall be sent
> to the participant by certified mail with a
> copy by regular mail; the notice shall state
> the proposed adverse action and specific
> grounds for [NYCHA's] complaint with enough
> specificity for the participant to prepare a
> defense.  It shall inform the participant
> that he or she may request a hearing [with
> NYCHA] by responding to the notice, in
> writing, within [20] days after mailing; the
> notice shall include information about the
> optional pre-hearing conference . . . that is
> available to the participant; said notice
> shall include a copy of the procedure herein,
> shall be sent in duplicate, and will contain
> a section where the participant may fill in
> his or her response; with instructions that
> the participant return one copy with his or
> her written response. . . .
>
> "(e)   In the event that the participant does
> not respond to the notice as provided for in
> [paragraph] 3(b) . . . , a Notice of Default,

in Spanish and English, shall be mailed to the participant. . . . Said Notice of Default shall have the same force and effect as a determination after a hearing to terminate the subsidy, and procedures for vacating such default shall be those set forth in paragraph '22' of this procedure.

\* \* \*

"22.  A determination to terminate a participant's subsidy or eligibility shall be implemented, as follows:

"(a)  a Notice in Spanish and English, shall be sent to the participant by regular and certified mail setting forth [NYCHA's] determination and including . . . an explanation of the right to seek judicial review and of the procedure for reopening a default . . . .

"(f)  for the purposes of Section 217 and Article 78 of the [CPLR], the determination to terminate a subsidy shall, in all cases, become final and binding upon receipt of the . . . Notice of Default, pursuant to paragraph '3(e)' . . . .

"(g)  For the purposes of this paragraph, there is a rebuttable presumption of receipt of the . . . notices referred to herein on the fifth day following the date of mailing."

The warning letter referred to in paragraph 3 (a) of the consent judgment has no pseudonym.  The notice of termination letter referred to in paragraph 3 (b) of that judgment, however, is known as a T-1 letter, while the notice of default letter referred to in paragraph 3 (e) therein is known as a T-3 letter (see Matter of Fair v Finkel, 284 AD2d 126, 127-128 [1st Dept 2001]).

II.

*Matter of Banos v Rhea*

In February 2012, Banos commenced a proceeding pursuant to CPLR article 78 against NYCHA and her landlord, respondent Coney Island Towers LLC, challenging NYCHA's termination of her Section 8 benefits.  There Banos alleged that NYCHA failed to comply with the consent judgment before terminating the subsidy inasmuch as she did not receive from NYCHA any of the three letters demanded by paragraph 3 of that judgment, i.e., she was not provided with a warning letter, a T-1 letter, or a T-3 letter.  In lieu of answering, NYCHA "cross-moved" for an order dismissing the petition as time-barred (see CPLR 3211 [a] [5]), contending that Banos failed to commence the proceeding within four months of NYCHA's final and binding determination to terminate her Section 8 benefits (see CPLR 217 [1]).  NYCHA specifically alleged that, pursuant to paragraph 22 (f) of the consent judgment, the determination to terminate Section 8 benefits became final and binding upon Banos's receipt of a T-3 letter, and that it had established Banos's presumptive receipt of that letter in May 2010.

Supreme Court denied the cross motion and granted NYCHA 60 days in which to answer the petition, reasoning that NYCHA breached the consent judgment inasmuch as it failed to send Banos a warning letter and a T-1 letter and thus did not trigger the applicable statute of limitations.  On appeal, with one Justice

dissenting, the Appellate Division affirmed, ruling that because "NYCHA did not comply with the notice provisions set forth in the . . . consent judgment," i.e., because NYCHA did not send to Banos all three of the notices demanded by that judgment, "the statute of limitations was not properly triggered and did not begin to run" (111 AD3d 707, 708 [2d Dept 2013]).  The Appellate Division subsequently granted NYCHA leave to appeal and certified the question whether its order was properly made.

*Matter of Dial v Rhea*

In May 2011, Dial commenced a proceeding pursuant to CPLR article 78 against NYCHA and her landlord, respondent 690 Gates, LP (690 Gates).  Similar to Banos, Dial alleged that NYCHA failed to comply with the consent judgment inasmuch as she did not receive from NYCHA any of the three letters prescribed in that judgment before her Section 8 benefits were terminated in August 2007.  Again in lieu of answering, NYCHA "cross-moved" for an order dismissing the petition as time-barred (see CPLR 217 [1]; CPLR 3211 [a] [5]).  NYCHA specifically contended that, pursuant to paragraph 22 (f) of the consent judgment, the determination to terminate Section 8 benefits became final and binding upon Dial's receipt of a T-3 letter.  In the same vein, NYCHA maintained that it had established Dial's presumptive receipt of that letter in August 2007.

For its part, 690 Gates opposed the cross motion, contending that NYCHA failed to establish that the T-3 letter had

been properly mailed to Dial. More importantly to our analysis, 690 Gates also contended that, to the extent the cross motion was denied, NYCHA should not be afforded additional time to answer the petition. According to 690 Gates, in the absence of evidence that NYCHA had complied with the notice requirements of the consent judgment, the court would be constrained to grant the petition, and an answer would be futile. Supreme Court agreed with Dial and 690 Gates inasmuch as it, inter alia, granted the petition without affording NYCHA the opportunity to answer and directed the payment of any rent subsidy for Dial that was not issued because of the cessation of her Section 8 benefits.

On appeal, the Appellate Division affirmed, this time unanimously. In this order, the Appellate Division more fully probed the background common to this appeal and Banos before concluding that, "[a]s a result of [NYCHA's] failure to abide by the notice provisions set forth in the . . . consent judgment, the statute of limitations was not properly triggered and did not begin to run" (111 AD3d 720, 723 [2d Dept 2013]). The Appellate Division subsequently granted NYCHA leave to appeal and certified the question whether its order was properly made.

                                III.

CPLR "[a]rticle 78 proceedings are subject to a four-month statute of limitations, running from the time when 'the determination to be reviewed becomes final and binding' " (People v Liden, 19 NY3d 271, 275-276 [2012], quoting CPLR 217

[1]; see Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194 [2007]). In Banos, there can be no dispute that, to the extent the T-3 letter presumptively received in May 2010 is deemed a final determination for the purpose of triggering the statute of limitations, the petition, which was filed in February 2012, would be time-barred. The same is true in Dial; there, the T-3 letter was presumptively received in August 2007, and the petition was filed in May 2011. Consequently, our review distills to the question whether the consent judgment renders final a determination to terminate based on the mailing of only a T-3 letter or, whether, under the terms of that judgment, a determination to terminate is final only when all three of the warning, T-1, and T-3 letters have been mailed. Cast another way, the primary issue herein is whether mailing of only the T-3 letter, rather than each of the three notices NYCHA previously agreed to provide in the consent judgment, triggered the statute of limitations in each of these CPLR article 78 proceedings.

Turning now to the rules that guide our analysis, it is settled that "[c]onsent decrees, while . . . judicial decrees subject to enforcement by the court, nonetheless are agreements between parties to litigation that 'should be construed basically as contracts' " (United States v International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 998 F2d 1101, 1106 [2d Cir 1993], quoting United States v ITT Continental Baking Co., 420 US 223, 236-237 [1975]). Put differently, "[a]

consent decree is in the nature of a contract, which we must

interpret in light of its plain language" (Callahan v Carey, 12

NY3d 496, 502 [2009] [internal quotation marks and citation

omitted]).  "Under New York law, written agreements are construed

in accordance with the parties' intent and '[t]he best evidence

of what parties to a written agreement intend is what they say in

their writing'" (Schron v Troutman Sanders LLP, 20 NY3d 430, 436

[2013], quoting Greenfield v Philles Records, 98 NY2d 562, 569

[2002]).

> Indeed,
>
> " '[w]hen parties set down their [agreement]
> in a clear, complete document, their writing
> should . . . be enforced according to its
> terms' (Vermont Teddy Bear Co. v 538 Madison
> Realty Co., 1 NY3d 470, 475 [2004], quoting
> W.W.W. Assoc. v Giancontieri, 77 NY2d 157,
> 162 [1990]).  A contract should be read as a
> whole to ensure that undue emphasis is not
> placed upon particular words and phrases (see
> South Rd. Assoc., LLC v International Bus.
> Machs. Corp., 4 NY3d 272, 277 [2005], citing
> Matter of Westmoreland Coal Co. v Entech,
> Inc., 100 NY2d 352, 358 [2003]).  Courts 'may
> not by construction add or excise terms, nor
> distort the meaning of those used and thereby
> make a new contract for the parties under the
> guise of interpreting the writing' (Vermont
> Teddy Bear, 1 NY3d at 475, quoting Reiss v
> Financial Performance Corp., 97 NY2d 195, 199
> [2001])" (Consedine v Portville Cent. School
> Dist., 12 NY3d 286, 293 [2009]).

Importantly, too, courts should "aim [for] a practical

interpretation of the expressions of the parties to the end that

there be a realization of [their] reasonable expectations"

(Sutton v East Riv. Sav. Bank, 55 NY2d 550, 555 [1982] [internal

quotation marks omitted]).

Based on those principles, I conclude that the statute of limitations was not triggered in either of the instant proceedings. As noted, the consent judgment arose from Williams (Dist Ct, SD NY, 81 Civ 1801, Ward, J., 1984), which, in turn, arose from a challenge to NYCHA's methods of terminating Section 8 assistance (see Williams, 975 F Supp at 319). As also noted, the consent judgment, inter alia, sets forth an agreed-upon series of steps NYCHA must take after making a preliminary determination to discontinue benefits under the Section 8 program. Pursuant to paragraph 3 (a), NYCHA must send a warning letter to the participant by regular mail. If the conditions that led to the preliminary determination are not remedied following the warning letter, paragraph 3 (b) provides that NYCHA must then mail a second letter containing a more specific notice of termination, i.e., a T-1 letter. Assuming those letters are mailed, and assuming there is no response to such correspondence, pursuant to paragraph 3 (e), NYCHA then must send a third letter, i.e., a T-3 letter, therein notifying the participant of the default. In such cases, paragraph 22 (f) provides that "the determination to terminate a subsidy shall . . . become final and binding upon receipt of the [T-3 letter]."

The majority and NYCHA seize upon paragraph 22 (f) in concluding that the mailing of the T-3 letter, even in the absence of the mailing of warning and T-1 letters, triggers the

statute of limitations in proceedings such as these.  I disagree.
To read paragraph 22 (f) in such isolation unduly emphasizes a
single part of the consent judgment (cf. Consedine, 12 NY3d at
293) and results in an impractical interpretation of that
agreement (cf. Sutton, 55 NY2d at 555) that eviscerates its
obvious ameliorative purpose of standardizing the termination of
Section 8 benefits through a trinity of notices.  In my view,
taking the position that the mailing of a T-3 letter alone is
sufficient to trigger the statute of limitations does not simply
limit the combined condition precedent to termination created by
the consent judgment's unified mailing requirement, but destroys
it.  Indeed, the consent judgment, although far from precisely
worded, more than once refers to the process by which the written
warning and explication of the termination of Section 8 benefits
is to be accomplished as a single "procedure" (see paragraphs 3
[b] and 3 [e] of the consent judgment; cf. paragraph 1 of that
agreement).  The nature of that reference strongly suggests that
the three notices now at issue are part of one unit and are
effective only when given in combination with one another.
NYCHA's failure to provide the series of notices required by the
consent judgment to form a termination of Section 8 benefits made
the determinations to terminate petitioners' benefits neither
effective nor final.  The statute of limitations was not
triggered in either of these proceedings.

        Implicit in this analysis is the rejection of NYCHA's

alternative contention that the statute of limitations began to run when each petitioner knew or should have known of its decision to terminate her Section 8 subsidy, irrespective of whether petitioners were properly notified of the cessation of those benefits.  In my view that contention is merely a backdoor way of arguing that, because petitioners received or presumably received the respective T-3 notices approximately 1½ years (Banos) and approximately 3½ years (Dial) before these proceedings were commenced, each such proceeding is time-barred. To adopt that approach would burden frequently elderly and unsophisticated Section 8 beneficiaries with interpreting the T-3 notice---a tack that is simply contrary to the notice and mailing procedure of the consent judgment.

NYCHA's additional alternative contention in Dial with respect to laches is likewise meritless.  "'The essential element of [that] equitable defense is delay prejudicial to the opposing party'" (Capruso v Village of Kings Point, 23 NY3d 631, 641 [2014], quoting Matter of Schulz v State of New York, 81 NY2d 336, 348 [1993]), but here NYCHA should have immediately known of the threat of litigation flowing from its breach of the protocol for terminating Section 8 benefits to which it agreed in the consent judgment.

IV.

Finally, with respect to Dial, I agree with NYCHA that it should have been permitted to answer the petition following

the denial of its cross motion to dismiss.  CPLR 7804 (f) provides, in relevant part, that "[i]f [a] motion [to dismiss] is denied, the court shall permit the respondent to answer, upon such terms as may be just."  This Court has recognized an exception to that mandate where "the facts are so fully presented in the papers of the respective parties that it is clear that no dispute as to the facts exists and no prejudice will result from the failure to require an answer" (Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102 [1984]), but that exemption does not apply in this case.  Here the record reflects that NYCHA sought dismissal of the petition on the grounds that it is barred by the statute of limitations and by the doctrine of laches, while at the same time reserving its right to answer to the extent the court denied the cross motion.  Inasmuch as NYCHA contended that the statute of limitations with respect to this proceeding was triggered by the mailing of the T-3 letter to petitioner, the evidence submitted in support of the cross motion naturally was focused on the T-3 notice.  Moreover, although NYCHA could conceivably have addressed the issue of the mailing of the warning and T-1 letters on reply, there was no reason for it to do so given its core contention that the T-3 letter alone is an independent trigger for the statute of limitations. Consequently, NYCHA should have been permitted to answer the petition in Dial and to contest, inter alia, the question whether

it owes retroactive rent subsidies to Dial.

Accordingly, in <u>Matter of Banos v Rhea</u> I would affirm the order of the Appellate Division and answer the certified question in the affirmative.  In <u>Matter of Dial v Rhea</u>, I would modify the order of the Appellate Division by vacating the part of Supreme Court's judgment granting the petition and remitting to that court for further proceedings.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>For Case No. 60</u>:  Order reversed, without costs, motion to dismiss petition as time-barred granted, and certified question answered in the negative.  Opinion by Judge Stein.  Judges Read, Pigott and Abdus-Salaam concur.  Judge Fahey dissents in an opinion in which Chief Judge Lippman and Judge Rivera concur.

<u>For Case No. 61</u>:  Order reversed, without costs, motion to dismiss petition as time-barred granted, and certified question not answered as unnecessary.  Opinion by Judge Stein.  Judges Read, Pigott and Abdus-Salaam concur.  Judge Fahey dissents in an opinion in which Chief Judge Lippman and Judge Rivera concur.

Decided May 12, 2015