■ In the Matter of T-Mobile Northeast, LLC, Appellant, v Anthony V. DeBellis, as Commissioner of Assessment of the City of Mount Vernon, et al., Respondents, et al., Respondents/ Defendants. [40 NYS3d 164]——

In a hybrid proceeding pursuant to CPLR article 78, inter alia, in the nature of mandamus to compel Anthony V. DeBellis, the Commissioner of Assessment of the City of Mount Vernon, to determine and approve the petitioner/plaintiff's applications for a refund of real property taxes and to correct the tax roll for tax years 2009, 2010, and 2011, and to review a determination of the Board of Education for the Mount Vernon City School District dated November 30, 2011, denying the petitioner/plaintiff's separate applications for a refund of real property taxes and to correct the tax roll for tax years 2009, 2010, and 2011, and action for declaratory relief, the petitioner/ plaintiff appeals from so much of an order and judgment (one

paper) of the Supreme Court, Westchester County (Cacace, J.), entered November 18, 2013, as denied the petition and dismissed the proceeding.

Ordered that the order and judgment is affirmed insofar as appealed from, with one bill of costs payable to the respondents/defendants appearing separately and filing separate briefs.

The petitioner/plaintiff T-Mobile Northeast, LLC (hereinafter T-Mobile), is a provider of cellular radio telephone services. As part of its cellular network, T-Mobile maintains antennas and other cellular radio equipment housed, among other places, on the rooftops of buildings in its service area. Five of those buildings are located in the City of Mount Vernon, upon which T-Mobile leases space for such equipment.

For the tax years 2009, 2010, and 2011, the respondents/defendants Anthony V. DeBellis, as Commissioner of Assessment of the City of Mount Vernon, the Mount Vernon City Council, and the City of Mount Vernon (hereinafter collectively the City), as well as the respondents/defendants Board of Education for the Mount Vernon City School District and the Mount Vernon City School District (hereinafter together the School District), separately imposed real property taxes on T-Mobile's equipment situated on those rooftops on the basis that the equipment was taxable real property pursuant to RPTL 102 (12) (i). After paying the taxes imposed, T-Mobile filed applications pursuant to RPTL 556 for a refund of the taxes paid and pursuant to RPTL 554 to correct the tax roll relating to each of those tax years with both the City and the School District. The School District denied the applications filed with it, and the City did not act upon the applications filed with it.

T-Mobile commenced this hybrid CPLR article 78 proceeding and declaratory judgment action against, among others, the City and the School District seeking, inter alia, to compel the City to determine and approve the applications filed with it, and to annul the School District's denial of the applications filed with it. In the order and judgment appealed from, the Supreme Court, inter alia, denied the petition and dismissed the proceeding. T-Mobile appeals. We affirm.

Pursuant to RPTL 102 (12) (i), the term "real property" includes: "When owned by other than a telephone company as such term is defined in paragraph (d) hereof, all lines, wires, poles, supports and inclosures for electrical conductors upon, above and underground used in connection with the transmission or switching of electromagnetic voice, video and data signals between different entities separated by air, street or

other public domain, except that such property shall not include: (A) station connections."

"'It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature'" (*Matter of Shannon*, 25 NY3d 345, 351 [2015], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]). Since "'the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'" (*Matter of Shannon*, 25 NY3d at 351, quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d at 583; *see Consedine v Portville Cent. School Dist.*, 12 NY3d 286, 290 [2009]). In determining legislative intent, "[t]he plain meaning of the language of a statute must be interpreted 'in the light of conditions existing at the time of its passage and construed as the courts would have construed it soon after its passage'" (*People v Litto*, 8 NY3d 692, 697 [2007], quoting *People v Koch*, 250 App Div 623, 624 [1937]; *see Consedine v Portville Cent. School Dist.*, 12 NY3d at 290; *Riley v County of Broome*, 95 NY2d 455, 463-464 [2000]; *Matter of Seidel v Board of Assessors, County of Nassau*, 88 AD3d 369, 378 [2011]). "[W]here the language is ambiguous, we may examine the statute's legislative history" (*Matter of Shannon*, 25 NY3d at 351 [internal quotation marks omitted]). Although, in general, courts defer to the construction of statutes by the authority responsible for their administration, where the question is one of "pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent," a court is "free to ascertain the proper interpretation from the statutory language and legislative intent" (*Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 14 AD3d 553, 556 [2005] [internal quotation marks omitted], *affd* 7 NY3d 451 [2006]).

Applying these principles, the phrase "for electrical conductors" as used in RPTL 102 (12) (i) does not modify the entire list "lines, wires, poles, supports and inclosures," but rather modifies only the final term, "inclosures" (*but see Matter of RCN N.Y. Communications, LLC v Tax Commn. of the City of N.Y.*, 95 AD3d 456, 457 [2012]). Consequently, T-Mobile's fiber optic, T-1, and coaxial cables, as well as the connections between T-Mobile's equipment and that of the local exchange carrier, are "lines" or "wires" within the meaning of RPTL 102 (12) (i) and, thus, are taxable real property.

Similarly, since T-Mobile's base transceiver station cabinets

contain, among other things, primary and battery backup power systems and equipment for "[m]odify[ing] and retransmit[ting] . . . radio signals for landline retransmission via separate electrical conductors or fiber optics," they can properly be characterized as "inclosures for electrical conductors" within the meaning of RPTL 102 (12) (i).

Likewise, while T-Mobile's rooftop antennas, which are flat and four to five feet in both length and width, cannot be characterized as "poles" within the ordinary understanding of that term, they can be properly characterized as "inclosures for electrical conductors" inasmuch as they are a part to the base transceiver station cabinet.

Further, the contention of the School District and the City that T-Mobile's rooftop antennas can also be taxed as fixtures pursuant to RPTL 102 (12) (b) is correct. "To meet the common-law definition of fixture, the personalty in question must: (1) be actually annexed to real property or something appurtenant thereto; (2) be applied to the use or purpose to which that part of the realty with which it is connected is appropriated; and, (3) be intended by the parties as a permanent accession to the freehold" (*Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y.*, 60 NY2d 85, 90 [1983]; *see Matter of City of New York [Kaiser Woodcraft Corp.]*, 11 NY3d 353, 361 [2008]). "Under the first prong, annexation originally required that the chattel be physically attached to the realty, but that concept has been enlarged to include items that are 'constructively annexed' to the land. Adaptability, meanwhile, contemplates both fitting the chattel to the particular purpose of the freehold, and the necessity of the chattel for complete use of the freehold, as when machinery is placed in a factory to perform a special purpose and is fitted for that purpose. The final element is an intention that attachment be permanent, requiring an objective interpretation of the installer's intention at the time of attachment. Even if the machinery could be removed, the critical factor was whether its installation was intended to be permanent" (*Matter of City of New York [Kaiser Woodcraft Corp.]*, 11 NY3d at 360). Thus, "[l]ess significance is accorded to the manner of annexation and more to the intention of the person annexing the property" (*Mastrangelo v Manning*, 17 AD3d 326, 327 [2005]). " 'The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached as upon the motive and intention of the party in attaching it' " (*id.* at 327, quoting *McRea v Central Natl. Bank of Troy*, 66 NY 489, 495 [1876]; *see South Seas Yacht Club v Board of Assessors & Bd. of Assessment Review of County of Nassau*, 136 AD2d 537, 538 [1988]).

Here, T-Mobile's equipment is fastened to the host buildings by bolts, frames, pipes, and brackets, and is weighted down with I-beams and cinder blocks. Although T-Mobile claims that it can remove the equipment at will without damage to the host buildings and occasionally replaces portions of the equipment, the character of the equipment as fixtures is unaffected inasmuch as the manner of annexation bears less weight on our analysis than the intention of the party affixing it to the realty (*see South Seas Yacht Club v Board of Assessors & Bd. of Assessment Review of County of Nassau*, 136 AD2d at 538; *see also Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y.*, 60 NY2d at 90-91; *Matter of Nextel of N.Y., Inc. v Assessor for Vil. of Spring Val.*, 4 Misc 3d 233, 245 [Sup Ct, Rockland County 2004]). The conditions in T-Mobile's leases permitting it to remove its equipment at the end of its leaseholds for undisclosed lease terms and renewal terms demonstrate its intent to make the equipment permanent for the term of the leasehold (*see Matter of Metromedia, Inc. [Foster & Kleiser Div.] v Tax Commn. of City of N.Y.*, 60 NY2d at 90-91; *Matter of Nextel of N.Y., Inc. v Assessor for Vil. of Spring Val.*, 4 Misc 3d at 245; *see generally* 11 Ops Counsel SBRPS No. 103 [2007]). Therefore, T-Mobile's rooftop antennas are taxable as fixtures pursuant to RPTL 102 (12) (b).

T-Mobile's remaining contentions are without merit. In light of the foregoing, we need not reach the remaining contentions of the City and the School District.

Accordingly, the Supreme Court properly denied the petition and dismissed the proceeding. Hall, J.P., Austin, Roman and Barros, JJ., concur.